[No. B073381. Second Dist., Div. Four. June 26, 1995.]

GENERAL MOTORS CORPORATION, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

1738

**COUNSEL**

Ajalat, Polley & Ayoob, Charles R. Ajalat, Terry L. Polley and Richard J. Ayoob for Plaintiff and Appellant.

James K. Hahn, City Attorney, Richard A. Dawson, Assistant City Attorney, and Ronald A. Tuller, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**VOGEL (C. S.), J.**—Plaintiff General Motors Corporation brought an action for a refund of business taxes imposed by the defendant City of Los Angeles pursuant to provisions of its municipal code on the ground that the taxes are discriminatory and violate both the California and the United States Constitutions. After a bench trial, judgment was entered in favor of the city. General Motors appeals.

I

INTRODUCTION AND SUMMARY

General Motors is a Delaware corporation engaged in the manufacture and sale of motor vehicles and automotive parts and accessories. It operates through unincorporated divisions, some of which produce specific makes of motor vehicles and trucks and some of which engage in operations ancillary to the automobile industry. The divisions producing makes of motor vehicles are Chevrolet, Pontiac, Buick Oldsmobile, Cadillac, and Truck and Bus Group. The other divisions are the Warehousing and Distribution Division and Motor Holdings.[1]

Chevrolet and Pontiac operated an assembly plant in the Van Nuys district of the city. Vehicles assembled at the Van Nuys plant were sold and shipped

---

[1]For purposes of the city business tax, each division is treated as a separate reporting unit.

to dealers in Los Angeles and to other dealers within California. The Chevrolet and Pontiac divisions reported and paid the city taxes imposed by Los Angeles Municipal Code section 21.03 pursuant to Los Angeles Municipal Code section 21.166[2] measured by 100 percent of the gross receipts from the sale of vehicles manufactured at the Van Nuys plant and sold within California.

The Buick, Cadillac, and Pontiac divisions sold motor vehicles in the city that were manufactured at locations outside of the City of Los Angeles. For the relevant tax years these divisions paid taxes measured by gross receipts from the sale of motor vehicles within the city, apportioned according to their selling activities within the city based on City Clerk Ruling No. 14.

General Motors filed this action to recover a refund of the taxes paid on account of gross receipts from the sale of the motor vehicles manufactured in the city and gross receipts from the in-city sales of motor vehicles manufactured elsewhere. Plaintiff's basic contention is that imposition of taxes pursuant to section 21.166 is unconstitutional because it discriminates against out-of-city manufacturers and impermissibly interferes with interstate and intrastate commerce. Plaintiff's attack on the city's business tax ordinance is based on *Armco Inc.* v. *Hardesty* (1984) 467 U.S. 638 [81 L.Ed.2d 540, 104 S.Ct. 2620] and *Tyler Pipe Industries* v. *Dept. of Revenue* (1987) 483 U.S. 232 [97 L.Ed.2d 199, 107 S.Ct. 2810].[3]

The matter was tried on stipulated facts without a jury. The trial court issued a statement of decision and found neither *Armco* nor *Tyler Pipe* controlling and gave judgment in favor of the city.

We reverse. We conclude that the city's tax scheme, under which an out-of-city manufacturer selling in Los Angeles pays a selling tax which an in-city manufacturer selling in Los Angeles does not, is indistinguishable from the tax schemes held to discriminate and interfere with the flow of commerce in *Armco* and *Tyler Pipe*, decisions of the United States Supreme Court which we are bound to follow. We find no merit to the city's attempts to distinguish those cases or to assert that this issue has been previously determined by pre-*Armco* precedents of the California Supreme Court.

---

[2]All statutory references are to the Los Angeles Municipal Code.

[3]Plaintiff's claim for refund covers the tax years 1981 through 1990. The parties stipulated that there is a factual dispute regarding the timeliness of claims for refund for the tax years 1981, 1982, and 1985 and the timeliness of filing suit for the tax years 1981 through 1986. For that reason the parties agreed to a severance, allowing them to proceed to trial on all other substantive issues leaving the open statute of limitations issues for trial following the final resolution of the issues presented here.

The city's tax scheme also fails the "internal consistency test" explained in *Armco, Tyler Pipe*, and *American Trucking Assns., Inc.* v. *Scheiner* (1987) 483 U.S. 266, 277 [97 L.Ed.2d 226, 238-239, 107 S.Ct. 2829], all of which are binding on this court. Under this test we must assume every other California local taxing authority had an identical tax scheme. Applying that assumption, there is discriminatory interference with the flow of commerce.

II

CITY'S BUSINESS TAX

Section 21.03 imposes a tax on businesses and occupations specified in sections 21.50 through 21.198 at rates and amounts indicated in each section. The city's business tax is measured by gross receipts of sales. Under section 21.15, subdivision (h), the city clerk has the duty to enforce the business tax ordinance and may make rules, approved by the city attorney, to provide for an apportionment of gross receipts according to the amount of business done in the city, to overcome any constitutional objections.

Section 21.166, subdivision (a) provided: "For every person manufacturing and selling any goods, wares or merchandise at wholesale, or selling any goods, wares or merchandise at wholesale, and not otherwise specifically taxed by other provisions of this article, the tax shall be $20.00 per year or fractional part thereof for the first $20,000.00 or less of gross receipts, plus $1.00 per year for each additional $1,000.00 of gross receipts or fractional part thereof in excess of $20,000.00 . . . ."

Section 21.168.1 provides in part: "Nothing in Sections 21.166 or 21.167 contained [*sic*] shall be construed to require the inclusion in the computation of the amount of the tax due thereunder the gross receipts of the sales of goods which are shipped to the purchasers of such goods by the seller to points outside of the State of California."

In 1972, the city clerk promulgated rule 14, a formula for apportionment which provides, ". . . [r]elative to a manufacturer, that the measure of tax shall include the total gross receipts from the sale of goods manufactured in the City and that manufacturing shall be deemed to include assembling. Relative to a seller located in the City selling goods, not manufactured in the City, . . . the measure of tax shall be those gross receipts directly attributable to activities carried on within the City."

The city enforces section 21.166, by differentiating between (1) "manufacturers and sellers of goods, wares or merchandise at wholesale" (manufacturers) and (2) "sellers of goods, wares or merchandise at wholesale" (sellers). Manufacturers within the city are taxed on the gross receipts of sales within and without the city throughout California. Sellers that do not manufacture within the city are taxed on an apportionment of gross receipts of sales based on the amount of their selling activity within the city.

## III

### STATE AND FEDERAL COMMERCE CLAUSES

■ Plaintiff's attack on the city's taxing scheme is based on the premise that it violates the commerce clause of the federal Constitution and the corresponding mandate of state law. "Congress shall have power . . . [t]o regulate commerce with foreign Nations, and among the several States . . . ." (U.S. Const., art. I, § 8, cl. 3.) A state tax on interstate commerce does not violate the commerce clause " 'if the tax [1] is applied to an activity with a substantial nexus with the taxing state, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the state. *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 [51 L.Ed.2d 326, 331, 97 S.Ct. 1076] (1977).' " (*American Trucking Assns., Inc.* v. *Scheiner, supra*, 483 U.S. 266, 277 [97 L.Ed.2d at p. 238].) If a local taxing scheme fails any one of the four requirements to comply with the commerce clause, we are required to invalidate it.

■ "Although the Constitution of this state, unlike that of the United States, contains no provision specifically preventing its constituent political subdivisions from enacting laws affecting commerce among them, there is no doubt that many of the considerations relevant to problems of interstate commerce apply in microcosm to the problems of intrastate or intercity commerce in a heavily populated state such as our own. In the words of one perceptive commentator: 'The basic policy underlying the commerce clause of the Federal Constitution [art. I, § 8, cl. 3]—to preserve the free flow of commerce among the states to optimize economic benefits—is equally applicable to intercity commerce within the state. If fifty independent economic units within the United States are undesirable, 387 economic enclaves within California would be intolerable. A tax burden which places intercity commerce at a disadvantage in comparison to a wholly intracity business may have such an effect.' [Citation.]" (*City of Los Angeles* v. *Shell Oil Co.*

(1971) 4 Cal.3d 108, 119 [93 Cal.Rptr. 1, 480 P.2d 953].) " '[I]t is clear that in spite of the absence of a specific "commerce clause" in our state Constitution, other provisions in that Constitution—notably those provisions forbidding extraterritorial application of laws and guaranteeing equal protection of the laws . . . —combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction.' " (*General Motors Corp.* v. *City of Los Angeles* (1971) 5 Cal.3d 229, 238 [95 Cal.Rptr. 635, 486 P.2d 163].)[4]

At oral argument, the city argued that the state Constitution was controlling and it contained no equivalent of the commerce clause. The foregoing demonstrates this contention is clearly wrong. If the city's business tax ordinance discriminates in favor of local manufacturers and against intrastate and interstate business, it violates both the federal and state Constitutions.

## IV

### Armco and Tyler Pipe

General Motors contends that under the city's business tax ordinance, goods both manufactured and sold within the city are taxed on a discriminatorily favorable basis compared with goods manufactured outside of the city but sold within the city, as well as goods manufactured within the city but sold outside of the city. In *Armco, Inc.* v. *Hardesty, supra,* 467 U.S. 638, and *Tyler Pipe Industries* v. *Dept. of Revenue, supra,* 483 U.S. 232, the United States Supreme Court held the business tax laws imposed by the states of West Virginia and Washington were unconstitutional and discriminatory and a restraint on interstate commerce. General Motors argues that the Los Angeles business tax ordinance—and the application of section 21.166 in particular—parallel the unconstitutional business tax laws of West Virginia and Washington.

In *Armco,* West Virginia imposed a gross receipts tax on the business of selling tangible property wholesale. Local manufacturers were exempt from the tax, but were subject to a higher manufacturing tax. Armco, an Ohio manufacturer, sold products in West Virginia and was required to pay West Virginia's tax on selling tangible property wholesale. Armco challenged the

---

[4]See also *City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d at page 120, footnotes 7 and 8, and page 124.

wholesale tax on the ground that the tax discriminated against interstate commerce because local manufacturers were exempted from the tax on selling. The court held that the wholesale gross receipts tax discriminated against interstate commerce because whether a wholesaler was subject to the tax depended upon whether it conducted manufacturing in or out of the state.

The court also noted that even though West Virginia manufacturers were taxed at .88 percent and out-of-state manufacturers selling in West Virginia were taxed at .27 percent, manufacturing and selling were not " 'substantially equivalent events' " and a tax on one does not compensate for the tax on the other. Simply put, it is not apparent that the higher tax on manufacturing includes the lower tax on wholesaling.

Armco was not required to prove an "actual discriminatory impact on it by pointing to a State that imposes a manufacturing tax that results in a total burden higher than that imposed on Armco's competitors in West Virginia." (*Armco Inc.* v. *Hardesty, supra,* 467 U.S. at p. 644 [81 L.Ed.2d at p. 546].) Because the court held West Virginia's taxing scheme facially discriminatory, Armco was relieved from demonstrating that any other state had a taxing scheme like West Virginia's imposing a manufacturer's tax on Armco elsewhere.

In *Tyler Pipe Industries* v. *Dept. of Revenue, supra,* 483 U.S. 232, the court held Washington's business and occupation tax unconstitutional "because it places a tax burden upon manufacturers in Washington engaged in interstate commerce from which local manufacturers selling locally are exempt." (*Id.* at p. 253 [97 L.Ed.2d at p. 217].) Washington imposed a business and occupation tax on the privilege of engaging in business activities in the state, including manufacturing and wholesale selling. The same tax rates applied to both activities. The measure of the wholesale selling tax was gross proceeds of sales and the measure of the manufacturing tax was the value of the manufactured product. However, under Washington's multiple activities exemption, local manufacturers were exempted from the manufacturing tax for any portion of their output that was subject to the wholesale selling tax. In other words, Washington manufacturers were allowed a credit against the manufacturer's tax for wholesale selling taxes paid on in-state sales, reducing the amount of their manufacturer's tax obligation. No credit was allowed for taxes paid on sales outside of Washington. The exemption resulted in (1) local manufacturers paying the wholesale selling tax on local sales and the manufacturing tax on out-of-state sales, and (2) out-of-state manufacturers paying the wholesale selling tax on sales in Washington.

The court held that Washington's manufacturing tax discriminated against interstate commerce in violation of the commerce clause of the federal Constitution. The exemption for local manufacturers that sold their products within Washington was found to have the same facially discriminatory consequences as West Virginia's exemption of local manufacturers in *Armco*.

In essence, the United States Supreme Court reasoned that a business taxing scheme which resulted in a higher tax being imposed when a business sells its product across state boundaries is discriminatory when a like business is not subjected to tax on sales entirely within the state. In *Armco*, no wholesale selling tax was imposed on in-state manufacturers but was imposed on out-of-state manufacturers engaged in wholesale sales within West Virginia. In *Tyler Pipe*, Washington allowed in-state manufacturers a deduction against the manufacturer's tax in an amount equivalent to what they paid as the wholesale selling tax for in-state selling. Washington manufacturers were allowed no credit against the manufacturing tax on account of taxes paid on out-of-state sales. In *Armco*, the United States Supreme Court found West Virginia's taxing scheme discriminatory because local manufacturers were excused from paying the tax on selling. In *Tyler Pipe*, the court invalidated Washington's business and occupation tax because it allowed local manufacturers a credit for taxes on sales within the state, but disallowed such credit for sales out-of-state. As we explain below, both *Armco* and *Tyler Pipe* compel reversal of the trial court's judgment in favor of the city.

V

CALIFORNIA SUPREME COURT DECISIONS ON SECTION 21.166

The city contends that all of the issues raised here were resolved by California Supreme Court decisions predating *Armco* and *Tyler Pipe*. We disagree.

The seminal case is *City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823 [271 P.2d 5], where an oil production company had oil fields and production operation located entirely outside of the city but maintained its main office and banking facility within the city. The city imposed a privilege tax based on Belridge's gross receipts. Belridge took exception on the ground that its predominant business was as a production company operating beyond the boundaries of the city with all of its production activity located

in Kern County. It argued not only was it not an in-city manufacturer, it was not a seller within section 21.166. Belridge contended selling referred to enterprises engaged solely in merchandising. The Supreme Court disagreed and held Belridge was selling wholesale within the city and was subject to its business tax ordinance.

The Supreme Court found the selling provisions of section 21.166 sufficiently broad to cover Belridge. It concluded that Belridge, even with its out-of-city production facilities, was subject to a gross receipts tax based on its sales activity within the city: "The business license tax here sought to be collected is a privilege tax, exacted for the privilege of engaging in the activity of 'selling.' When this activity takes place within the city, the rate of tax may be measured by the gross receipts derived therefrom." (*City of Los Angeles* v. *Belridge Oil Co., supra*, 42 Cal.2d at p. 831.)[5]

In *City of Los Angeles* v. *Shell Oil Co., supra*, 4 Cal.3d 108, the city sought to impose its selling tax on Shell which had only a small office and a bulk terminal located in the city. The city's assessment included gross receipts attributable to sales of gasoline delivered from Shell's in-city bulk terminal. Shell contended that the assessment was invalid because it was not selling in the city. The Supreme Court, applying the *Belridge* decisions, held that out-of-city manufacturers selling within the city were subject to a tax on gross receipts of sales. The imposition of an apportioned tax according to Shell's selling activity within the city was held constitutionally permissible.

*Carnation Co.* v. *City of Los Angeles* (1966) 65 Cal.2d 36 [52 Cal.Rptr. 225, 416 P.2d 129] was a challenge to the validity of business tax on manufacturers. All of Carnation's manufacturing, processing, and handling facilities were located in the City of Los Angeles. The city imposed its business tax on 100 percent of Carnation's gross receipts wherever generated in the State of California.

The court held that it is "constitutional for a city to tax the privilege of manufacturing, processing or handling goods within its boundaries, and to determine the amount of the tax on the gross receipts from sales of goods, regardless of whether the sales are made within or without the boundaries.

---

[5]The case returned to the Supreme Court following a retrial involving the allocation of Belridge's gross receipts subject to tax. Finding the task difficult, the parties stipulated that " '[n]ot more than 20% of defendant's total gross receipts . . . [are] attributable to defendant's business [or selling activities] in the city of Los Angeles' " under any method of allocation. The Supreme Court reiterated its holding that the imposition of the tax on selling must be apportioned according to business actually carried on within the city. (*City of Los Angeles* v. *Belridge Oil Co.* (1957) 48 Cal.2d 320, 323 [309 P.2d 417].)

(*American Mfg. Co.* v. *St. Louis*, 250 U.S. 459 . . . ." (*Carnation Co.* v. *City of Los Angeles*, *supra*, 65 Cal.2d at p. 38.) The primary issue resolved there was the authority of the city to tax a resident manufacturer on gross receipts generated within and without the city boundaries.

General Motors first challenged the city's business tax in 1971. (*General Motors Corp.* v. *City of Los Angeles*, *supra*, 5 Cal.3d 229.) In that matter, General Motors argued its Van Nuys plant was involved only in assembling parts made at other plants in and out of California and could not rationally be classified as a resident manufacturer under section 21.166. Based on this premise, General Motors contended *Carnation Co.* v. *City of Los Angeles*, *supra*, 65 Cal.2d 36, was inapplicable and the statewide gross receipts generated from its Van Nuys plant were not the lawful measure of its tax obligation. The Supreme Court held, "It is only when the final operation yielding the finished product is inappreciable in comparison with the extra-territorial activities producing the component parts that a 'manufacturing' tax based on unapportioned gross receipts may be said to reach significant extraterritorial values." (5 Cal.3d at p. 240.) The Supreme Court concluded, ". . . the automobiles [assembled at the Van Nuys plant] are 'wholly manufactured' in the city within the meaning of *Carnation* and *Shell*, and the City may properly utilize the unapportioned gross receipts derived from the sale of those automobiles, wherever such sales be made, as a factor in General Motors' business privilege tax." (*Ibid.*)

The question decided in *Belridge*, *Shell*, *Carnation*, and the 1971 *General Motors* case was whether there was a sufficient nexus or relationship to the city to find an incident subject to taxation. In those cases, the court charac-terized the tax as one for the privilege of selling or the privilege of manufacturing, and was simply construing section 21.166 to determine the city's jurisdictional authority to tax. The definitive application of these cases is made clear in *Carnation Co.* v. *City of Los Angeles*, *supra*, 65 Cal.2d 36, 39-40: "Moreover, the tax is not levied on selling, as in the case of a sales tax, but rather on the privilege of engaging in a business, with the measure of the tax based on gross sales. [Citation.] More significantly, it must be remembered that *Belridge* dealt with a business whose *sole* activity in Los Angeles was selling, and that the language in both [*Belridge*] opinions is addressed only to that factual context. As sales in those cases were the sole incidents which gave Los Angeles jurisdiction to tax the business activities there involved, the city was bound to measure its tax on only those sales made within its jurisdiction, for constitutional reasons. . . . [¶] In the instant case, however, the incident of the tax which necessarily must have some minimum contact with Los Angeles is 'manufacturing and selling,' and

the record reveals that all products subjected to the measure of the tax, whether sold within or without Los Angeles, fall within that language as interpreted by ruling No. 14. No question of a constitutional limitation is posed, as in *Belridge*, because manufacturing, if not selling, provides the required 'definite link' or 'minimum connection' with the city." (Italics in original.)

The present matter does not involve the question of the city's jurisdiction to tax General Motors. Indeed, General Motors has not challenged the authority of the city to impose taxes on its transactions within the city, but challenges the validity of section 21.166 as a discriminatory tax favorable to local manufacturers and contrary to state and federal proscriptions against restraint of intrastate and interstate commerce. This precise issue has never been considered by any California appellate court.

## VI

### SECTION 21.166 IS DISCRIMINATORY

■ General Motors argues, "The facts of the instant case, compared with *Armco*, are virtually identical: The local manufacturer does not pay the Los Angeles wholesaling [selling] tax, but the out-of-City manufacturer does. . . . Thus, General Motors selling cars in Los Angeles assembled, for example, at its Flint, Michigan plant *pays* the Los Angeles wholesaling [selling] tax, whereas, a Los Angeles manufacturer selling in Los Angeles *does not pay* the wholesaling [selling] tax. The discrimination is clear. Two manufacturers selling within Los Angeles are treated differently depending on whether they manufacture within Los Angeles or not. The transaction is taxed more heavily when it crosses City of Los Angeles lines (a wholesaling tax is imposed) than when it does not (the wholesaling tax is not imposed)." (Italics in original.) The parallel is inescapably obvious.

There are no relevant differences among the taxing schemes of West Virginia, Washington, and the City of Los Angeles. In all three there is a separate tax on manufacturing and a separate tax on selling with the local manufacturer functionally or actually exempted from the selling tax. As a consequence, notwithstanding any differential in the actual rate or amount of tax, they are discriminatory on their face in favor of in-city manufacturers. This is so even though section 21.166 provides dual categories subject to taxation, one referring to "manufacturing and selling" and the other referring to "selling" only. The labels applied to different taxpayers are not determinative if the practical effect of the taxing scheme is to impose a heavier tax burden on out-of-city businesses that compete within the city market than it

imposes on residents that also engage in commerce within the city. (*American Trucking Assns., Inc.* v. *Scheiner*, *supra*, 483 U.S. 266, 282 [97 L.Ed.2d 226, 242].) Here, as in *Armco*, the local manufacturer pays the manufacturing tax but not the selling tax. Consequently, the city's taxing scheme discriminates against all other manufacturers that must pay the tax on selling. On its face, section 21.166 is discriminatory.

## VII

### THE INTERNAL CONSISTENCY TEST

■ Although we hold section 21.166 discriminatory per se, we nonetheless extend our analysis to test it for "internal consistency." One commentator prophetically observed, "The [United States Supreme] Court's apparent embrace of the 'internal consistency' doctrine has consequences far beyond its immediate impact on the taxes at issue in *Armco*, *Tyler Pipe*, and *Scheiner*. In the course of its opinions in these cases, the Court disapproved a number of precedents sustaining taxes that fail the 'internal consistency' test. Moreover, the Court's adoption of 'internal consistency' as a general principle of commerce clause adjudication places many other state [and city] tax levies under a constitutional cloud." (Hellerstein, *Is "Internal Consistency" Foolish?: Reflections on an Emerging Commerce Clause Restraint on State Taxation* (1988) 87 Mich. L.Rev. 138, 148.) ■ However reluctant we are to place a cloud over the city's business tax ordinance, we are bound to do so because the "[d]ecisions of the United States Supreme Court are binding not only on all of the lower federal courts [citation], but also on state courts when a federal question is involved, such as constitutionality of [an ordinance] or construction of the federal Constitution or statutes. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 779, p. 750; *Perkins Mfg.* v. *Jordan* (1927) 200 Cal. 667, 672-673 [254 P. 551] [commerce clause].) ■ Here, the central issue is whether the city's business tax ordinance, section 21.166, complies with the commerce clause of the federal Constitution, and our decision is inevitably governed by *Armco*, *Tyler Pipe*, and *Scheiner*.

In both *Armco* and *Tyler Pipe*, the court excused the plaintiffs from proving actual discriminatory impact; the court did not require them to point to a "State that imposes a manufacturing tax that results in a total burden higher than that imposed on Armco's competitors in West Virginia." (*Armco Inc.* v. *Hardesty*, *supra*, 467 U.S. at p. 644 [81 L.Ed.2d at p. 546].) The United States Supreme Court held: "This is not the test. In *Container Corp. of America* v. *Franchise Tax Board*, 463 U.S. 159, 169 [77 L.Ed.2d 545,

555-556, 103 S.Ct. 2933] (1983), the Court noted that a tax must have 'what might be called internal consistency—that is the [tax] must be such that, if applied by every jurisdiction,' there would be no impermissible interference with free trade. In that case, the Court was discussing the requirement that a tax be fairly apportioned to reflect the business conducted in the State. A similar rule applies where the allegation is that a tax on its face discriminates against interstate commerce. A tax that unfairly apportions income from other States is a form of discrimination against interstate commerce. [Citation.] Any other rule would mean that the constitutionality of West Virginia's tax laws would depend on the shifting complexities of the tax codes of 49 other States, and that the validity of the taxes imposed on each taxpayer would depend on the particular other States in which it operated." (*Armco Inc.* v. *Hardesty, supra,* 467 U.S. at pp. 644-645 [81 L.Ed.2d at pp. 546-547]; *Tyler Pipe Industries* v. *Dept. of Revenue, supra,* 483 U.S. at pp. 247-248 [97 L.Ed.2d at pp. 213-214].)

The internal consistency test is a federal doctrine that requires the court to assume that all taxing jurisdictions have a taxing scheme exactly the same as the taxing scheme under review. With that assumption in mind, General Motors argues that it, as an out-of-state manufacturer selling in Los Angeles, is subjected to two taxes: a selling tax imposed by Los Angeles and a manufacturing tax imposed by the jurisdiction where its manufacturing facility is located. In contrast, a Los Angeles manufacturer selling in Los Angeles pays only a manufacturing tax. A Los Angeles manufacturer pays two taxes when it sells outside of the city—one on 100 percent of its gross receipts as an in-city manufacturer and a second on its apportioned gross receipts according to its selling activity in the jurisdiction where the sale occurs. General Motors demonstrates this contention by reference to stipulated fact No. 23 A, B, C:

"A. This example compares two manufacturers both manufacturing in the City, but selling in different places.

|  | City of Los Angeles Tax | City X Tax | Total Tax |
|---|---|---|---|
| A manufactures wholly in L.A. and sells wholly in L.A. | $100 | 0 | $100 |
| B manufactures wholly in L.A. and 80% of its selling activities are in City X. | $100 | $80 | $180 |

"B. This example compares two manufacturers both selling in the City, but with A manufacturing within the City and with B manufacturing in City X.

| | City of Los Angeles Tax | City X Tax | Total Tax |
|---|---|---|---|
| A manufactures wholly in L.A. and sells wholly in L.A. | $100 | 0 | $100 |
| B manufactures wholly in City X and 80% of its selling activities are in L.A. | $80 | $100 | $180 |

"C. This example sets forth the tax consequences if A manufactures and sells wholly in City X.

| | City of Los Angeles Tax | City X Tax | Total Tax |
|---|---|---|---|
| A manufactures and sells wholly in City X | 0 | $100 | $100" |

In the simplest terms, an additional tax is imposed only because and only when a sale crosses the city's boundaries, imposing an additional burden on the importer/exporter, e.g., the out-of-city seller and the in-city manufacturer selling outside of the city.[6] "A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of

[6]The parties have stipulated as follows: "With respect to goods manufactured within the City and sold solely within the City, taxpayers are subject to only one tax (imposed pursuant to the Manufacturing Provision) measured by 100% of the gross receipts from the sale of goods manufactured within the City. [¶] . . . [W]ith respect to goods manufactured within the City and sold without the City but within California, taxpayers may be subject to two taxes: a tax measured by 100% of the gross receipts with respect to goods manufactured within the City under the Manufacturing Provision, and a possible second tax measured by a portion of those same gross receipts by the jurisdiction where the sale takes place, pursuant to a provision equivalent to the Selling Provision. The City of Oakland and City and County of San Francisco impose a tax on selling pursuant to selling provisions similar to the Los Angeles Selling Provision. [¶] . . . [W]ith respect to goods manufactured outside Los Angeles and sold within the City, taxpayers are subject to the tax imposed by the City on their selling activities, pursuant to the Selling Provision, in addition to being potentially subject to a tax on their manufacture in the jurisdiction in which their manufacturing took place,

taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." (*Oklahoma Tax Com.* v. *Jefferson Lines* (1995) __ U.S. __, __ [131 L.Ed.2d 261, 272, 115 S.Ct. 1331, 1338].)

Section 21.166 imposes an unallocated tax on 100 percent of the gross receipts of an in-city manufacturer, and the same gross receipts are subject to a selling tax in an apportioned amount by different jurisdictions where sales actually occur, e.g., the City of Oakland, and the City and County of San Francisco. The same is true in the reverse situation where the City of Los Angeles imposes a tax on selling within its boundaries by an out-of-city manufacturer, which is taxed on manufacturing elsewhere. In both instances, the additional tax is triggered only when the transaction crosses city boundaries. It is also clear that when an in-city·manufacturer sells within the city there is no tax on selling, giving the local manufacturer a competitive advantage in its home market. It is clear that the city's taxing scheme impedes commerce among the states and the cities and counties of California.

We hold that section 21.166 is discriminatory on its face and fails the internal consistency test, violating both the commerce clause of the United States Constitution and the equivalent proscriptions derived from provisions of the California Constitution.

## VIII

### ATTORNEY FEES

█ General Motors claims attorney fees pursuant to 42 United States Code section 1983. The United States Supreme Court has broadly construed section 1983 to include actions based on violations of the commerce clause. (*Dennis* v. *Higgins* (1990) 498 U.S. 439 [112 L.Ed.2d 969, 111 S.Ct. 865].) Having found that the city's business tax ordinance restrains interstate commerce contrary to article I, section 8, clause 3 of the federal Constitution, we find General Motors is entitled to recover attorney fees incurred for both the trial and this appeal in an amount to be determined by the trial court according to proof.

---

pursuant to a provision equivalent to the Manufacturing Provision." This stipulation disposes of the city's argument that "Los Angeles imposes a single Business Tax with a specific rate for businesses which are classified as 'Wholesale Sales.'"

## IX

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant shall recover costs on appeal.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied July 20, 1995, and respondent's petition for review by the Supreme Court was denied September 21, 1995.