[Nos. A081239, A081246, A081253. First Dist., Div. One. Jan 14, 1999.]

GENERAL MOTORS CORPORATION, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

450

## Counsel

Ajalat, Polley & Ayoob, Charles R. Ajalat, Terry L. Polley and Richard J. Ayoob for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Dennis Aftergut, Chief Assistant City Attorney, and Claude F. Kolm, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**STRANKMAN, P. J.**—A municipality imposed a business tax upon a corporation's local selling activity. (S.F. Mun. Code, pt. III, §§ 1002.2, 1004.08, 1004.13.)[1] The corporation claimed the tax interfered with commerce by discriminating in favor of local manufacturers and sued for both a refund under state law and damages under federal civil rights law. (Gov. Code, §§ 935, subd. (a), 940.4, 945; S.F. Mun. Code, pt. III, former § 1017; 42 U.S.C. § 1983.) On cross-motions for summary judgment, the trial court entered judgment for the municipality. (Code Civ. Proc., § 437c.) We reverse. We follow the Second District in holding that a business tax that differentiates between in-city manufacturers and out-of-city manufacturers violates state and federal commerce protections. (*General Motors Corp.* v. *City of Los Angeles* (1995) 35 Cal.App.4th 1736, 1741-1742, 1752 [42 Cal.Rptr.2d 430] (*General Motors Corp.*).) The corporation is entitled to a full refund of the contested business taxes. The tax refund provides an adequate remedy and thus precludes any relief or attorney fees under federal civil rights law.

### FACTS

The City and County of San Francisco (City or San Francisco) imposes a tax upon persons who manufacture and sell, or sell, goods through business activities within the City. (S.F. Mun. Code, pt. III, §§ 1002.2, 1004.08, 1004.13.) General Motors Corporation (General Motors) sells vehicles and vehicle parts in the City that it manufactures outside the City, both within the state and outside the state. General Motors paid business tax to the City as a seller of goods.

The city tax collector distinguished between manufacturer-sellers (those who sell goods they manufactured within the City) and nonmanufacturing sellers (those who sell goods they manufactured outside the City). (S.F. Tax Collector Ruling Nos. 6A & 6B.) An in-city manufacturer is taxed on the gross receipts from California sales. (S.F. Tax Collector Ruling No. 6A.) An out-of-city manufacturer is taxed on an apportionment of gross receipts of

---

[1] All references to the San Francisco Municipal Code are to the code sections existing at the time relevant here.

California sales based on the amount of selling activity within the City.[2] (S.F. Tax Collector Ruling No. 6B.)

█ General Motors claims that the business tax discriminates against out-of-city manufacturers like itself, and impedes the flow of commerce. General Motors alleges that in-city manufacturers are subject to only one tax upon the gross receipts from the sale of goods, whereas out-of-city manufacturers are subject to two taxes—a tax upon the portion of gross receipts attributable to selling activity within the City, and any tax upon gross receipts imposed by another municipality where the seller manufactures its goods. General Motors asserts that it paid the City of Los Angeles (Los Angeles) business tax on the gross receipts of vehicles manufactured there, while also paying San Francisco a gross receipts tax for those same vehicles sold in San Francisco.

General Motors requested a tax refund but the City refused the request. General Motors then sued the City in five separate actions for a refund of approximately $200,000 in business taxes paid from 1982 to 1984, and 1987 to 1996. In addition to seeking a refund under state law, General Motors also alleged violations of rights secured by the state and federal Constitutions.

General Motors and the City each moved for summary judgment. The trial court granted the City's summary judgment motion and entered separate judgments in the City's favor on all five actions in October 1997. We consolidated General Motor's appeals from the several judgments.

## DISCUSSION

*San Francisco's business tax is unlawful.*

We do not write on a clean slate. In addition to challenging San Francisco's business tax, General Motors also challenged Los Angeles's parallel business tax—and won. In *General Motors Corp.*, the Second District held that a business tax that differentiates between in-city manufacturers and out-of-city manufacturers violates state and federal commerce protections. (*General Motors Corp., supra,* 35 Cal.App.4th at pp. 1741-1742, 1752.) Los Angeles effectively created a manufacturing tax and a selling tax, with the local in-city manufacturer exempt from the selling tax. (*Id.* at p. 1748.) The tax law discriminated against out-of-city manufacturers who were subject to

---

[2]Apportionment guidelines provide, for example, that goods stored and delivered outside the City are taxed upon 50 percent of the gross receipts of sales made and billed through a City sales office. (S.F. Tax Collector Ruling No. 6B.)

taxation by both the city where they manufactured their goods and the city where they sold the goods. (*Id.* at pp. 1748-1749, 1752.)

The City acknowledges that there is no difference between the tax ordinance and rulings here, and those found unconstitutional in *General Motors Corp.*[3] The now superseded Los Angeles ordinance and the challenged San Francisco ordinance are identical: each ordinance taxes a percentage of the gross receipts of persons "manufacturing and selling any goods, wares or merchandise at wholesale, or selling any goods, wares or merchandise at wholesale" in the respective cities. (S.F. Mun. Code, pt. III, § 1004.13, former subd. (a)(1); *General Motors Corp., supra,* 35 Cal.App.4th at p. 1741 [discussing L.A. Mun. Code, § 21.166, subd. (a)].) Both Los Angeles and San Francisco delegate to municipal tax administrators the task of adopting rules apportioning gross receipts to avoid constitutional objections to extra-territorial tax. (S.F. Mun. Code, pt. III, § 1006; *General Motors Corp., supra,* at p. 1741 [discussing L.A. Mun. Code, § 21.15, subd. (h)].) The cities' tax administrators both adopted rulings differentiating between in-city manufacturers and out-of-city manufacturers, so that "[m]anufacturers within the city are taxed on the gross receipts of sales within and without the city throughout California. Sellers that do not manufacture within the city are taxed on an apportionment of gross receipts of sales based on the amount of their selling activity within the city." (S.F. Tax Collector Ruling Nos. 6A & 6B; *General Motors Corp., supra,* at p. 1742 [discussing L.A. City Clerk Ruling No. 14].)

The City acknowledges the obvious applicability of *General Motors Corp.*, but urges us to reject it. The City is especially critical of the Second District's conclusion that the tax ordinance is facially discriminatory in the law's disparate treatment of in-city manufacturers and out-of-city manufacturers. (*General Motors Corp., supra,* 35 Cal.App.4th at pp. 1749, 1752.) The City argues that the Los Angeles and San Francisco tax ordinances do not themselves differentiate between in-city and out-of-city manufacturers; the differentiation lies within administrative tax rulings. Like a fox chewing off its trapped foot, the City discards its decades-old tax rulings as "mere interpretations" of the ordinance and tries to support itself on the ordinance alone. But the ordinance expressly distinguishes between "manufacturing and selling" and "selling," and the tax rulings can only be understood as an

---

[3]The identity of the two ordinances led the parties to stipulate to delay the San Francisco cases pending resolution of the Los Angeles case. The City said it expected to refund the contested taxes if General Motors prevailed against the parallel Los Angeles tax. Despite its representations, the City did not refund taxes upon invalidation of the parallel Los Angeles tax because it claims that the Second District's opinion failed to address arguments it believes meritorious.

implementation of the ordinance's intent. (S.F. Mun. Code, pt. III, § 1004.13, subd. (a)(1).) The Second District's opinion in *General Motors Corp.* is well reasoned. We reject the City's criticism of the opinion, and decline the City's invitation to depart from it.

*General Motors is entitled to a refund of its entire business tax payments.*

 General Motors's remedy for the City's imposition of an unconstitutional tax is a refund of all taxes "illegally collected." (S.F. Mun. Code, pt. III, § 1017.) General Motors claims that its entire tax payment to the City was illegally collected and must be refunded in full. The City disputes this point. The City claims it need not refund the full amount of taxes paid to it, but may instead refund only an amount equal to any taxes General Motors paid to other cities on the same goods San Francisco taxed. (S.F. Tax Collector Ruling No. 6, subd. (f)(1).) General Motors would thus have to document double taxation extending back more than 15 years. (S.F. Tax Collector Ruling No. 6, subd. (f)(1)(B).) The City maintains that this more limited relief is the appropriate remedy because it refunds the illegal or excess taxes General Motors paid, and no more.

 Where, as here, a taxing authority "places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment [of the United States Constitution] obligates the [taxing authority] to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." (*McKesson Corp.* v. *Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 31 [110 S.Ct. 2238, 2247, 110 L.Ed.2d 17], fns. omitted.) The taxpayer is entitled to a " 'clear and certain remedy.' " (*Id.* at p. 32 [110 S.Ct. at p. 2248].) A taxing authority that has imposed a discriminatory tax "retains flexibility" in rectifying the unlawful deprivation. (*Id.* at p. 39 [110 S.Ct. at p. 2252].) The remedy chosen, however, must eliminate the discrimination suffered by the disfavored taxpayer. (*Id.* at p. 41 [110 S.Ct. at pp. 2252-2253].)

 The City argues that elimination of discrimination in its tax scheme does not demand a full refund of all selling taxes General Motors paid, but is achieved by refunding the selling taxes paid on goods that had also been assessed a manufacturing tax in another city. Thus, General Motors pays no more than one tax, like the favored in-city manufacturers. The argument is fatally flawed. The City's proposed remedy does not eliminate disparate treatment of in-city and out-of-city manufacturers selling their goods in San Francisco. While in-city and out-of-city manufacturers would each pay only

one tax, they would not be paying the same tax. General Motors would pay a selling tax on goods actually sold in San Francisco, with an in-city manufacturer paying a manufacturing tax on all goods manufactured in San Francisco. The local manufacturer would retain its effective exemption from the City's selling tax. Moreover, out-of-city manufacturers would not be guaranteed liability limited to only one tax. A manufacturer, like General Motors, that sells in multiple cities would be subject to multiple selling taxes whereas a local manufacturer that sells exclusively in San Francisco pays only one tax.

The procedural aspects of the City's proposed remedy also condemn it as less than " 'clear and certain' " relief. (*McKesson Corp.* v. *Florida Alcohol & Tobacco Div., supra,* 496 U.S. at p. 32 [110 S.Ct. at p. 2248].) The refund is conditioned upon the taxpayer filing a timely application and demonstrating double taxation. (S.F. Tax Collector Ruling No. 6, subd. (f)(1)(B) & (f)(1)(D)(ii).) The City deems "timely" to mean within 90 days of the date of its Tax Collector Ruling authorizing the refund. (*Id.* at subd. (f)(1)(D)(ii).) The ruling was issued in 1997, so the time passed for a refund before General Motors's lawsuits challenging the tax have been adjudicated. Even if San Francisco waived this time limitation, the unfair burden of demonstrating double taxation would remain. General Motors's claims for illegal taxes date back to 1982. It is unreasonable to require a taxpayer to produce documentation from 17 years ago that it was otherwise never required to maintain.

The City wrongly claims that the United States Supreme Court has specifically approved the remedy it proposes. In *Tyler Pipe Industries* v. *Dept. of Revenue* (1987) 483 U.S. 232, 236, 253 [107 S.Ct. 2810, 2814, 2823, 97 L.Ed.2d 199], the high court invalidated a state business tax that discriminated in favor of local manufacturers that sold their goods exclusively within the state. Washington imposed a manufacturing tax on goods made in Washington and a selling tax on goods sold in Washington. (*Id.* at p. 235 [107 S.Ct. at pp. 2813-2814].) But taxpayers were exempt from the manufacturing tax if they paid the selling tax on the same goods. (*Id.* at p. 240 [107 S.Ct. at p. 2816].) The tax scheme meant that local manufacturers selling locally paid only a Washington selling tax; local manufacturers selling out-of-state paid a manufacturing tax to Washington and were subject to selling taxes from other states; and out-of-state manufacturers paid a selling tax to Washington and were subject to manufacturing taxes from other states. Washington's business tax "exposes manufacturing or selling activity outside the State to a multiple burden from which only the activity of manufacturing in-state and selling in-state is exempt." (*Id.* at p. 248 [107 S.Ct. at p. 2820].)

The court found the tax exemption for local manufacturers-sellers violative of interstate commerce protections but suggested that its holding "would not necessarily preclude the continued assessment of a wholesaling tax. Either a repeal of the manufacturing tax or an expansion of the . . . exemption to provide out-of-state manufacturers with a credit for manufacturing taxes paid to other States would presumably cure the discrimination." (*Tyler Pipe Industries* v. *Dept. of Revenue, supra,* 483 U.S. at p. 249 [107 S.Ct. at pp. 2820-2821].)

The City argues that its proposed remedy simply acts on this suggestion, by granting General Motors a credit for manufacturing taxes it paid to other cities. But the credit suggested by the court in *Tyler Pipe Industries* would effectively make local and out-of-state manufacturers equally subject to selling taxes and exempt from manufacturing taxes. San Francisco's proposed credit would not fully eliminate the discrimination suffered by General Motors as a disfavored taxpayer because it would still be paying a selling tax to San Francisco while local manufacturers pay a manufacturing tax. Moreover, the court in *Tyler Pipe Industries* was suggesting a possible prospective statutory cure, not endorsing a credit system as an adequate retroactive remedy. As discussed earlier, the City's proposed credit does not provide " 'clear and certain' " relief given the onerous burden it places on taxpayers to document double taxation reaching back 17 years. (*McKesson Corp.* v. *Florida Alcohol & Tobacco Div., supra,* 496 U.S. at p. 32 [110 S.Ct. at p. 2248].)

We recognize that the Washington Supreme Court has approved a retroactive tax credit as an adequate remedy for business taxes unlawfully collected. (*Digital Equip.* v. *State, Dept. of Rev.* (1996) 129 Wn.2d 177 [916 P.2d 933, 939].) But the credit there related to recent tax years, no more than four years after the tax was assessed. (See *id.* at pp. 934-935 [1987 credit applied to 1983-1987 tax period].) The court's approval of the credit for taxes paid to others jurisdictions was also "acutely academic" since the taxpayer challenging the credit conceded that it had not been double taxed and "consequently suffered no injury under the former unconstitutional tax scheme." (*Id.* at p. 940.) *Digital Equipment Corp.* is not compelling since we are here concerned with a credit for unlawful taxes collected up to 17 years ago which resulted in double taxation that must be remedied.

*General Motors is not entitled to collect attorney fees.*

General Motors claims a judgment in its favor entitles it to attorney fees. General Motors notes that its lawsuits sought not only a refund under

state law, but also damages (equal to a refund) for violations of rights secured by the state and federal Constitutions. ■ A municipality's enforcement of an ordinance that deprives a citizen of federal constitutional rights, including commerce protections, is generally liable under federal civil rights law. (42 U.S.C. § 1983; *Dennis* v. *Higgins* (1991) 498 U.S. 439, 443-451 [111 S.Ct. 865, 868-873, 112 L.Ed.2d 969]; *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611].)[4] A citizen that prevails in vindicating its civil rights is entitled to attorney fees. (42 U.S.C. § 1988(b).)

■ In reliance upon these general principles, the Second District awarded General Motors attorney fees in its successful challenge to Los Angeles's business tax that parallels the San Francisco business tax contested here. (*General Motors Corp., supra,* 35 Cal.App.4th at p. 1752.) General Motors argues that the same determination should apply on this appeal. However, the Second District did not have the opportunity to consider *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n* (1995) 515 U.S. 582 [115 S.Ct. 2351, 132 L.Ed.2d 509] (*National Private Truck*), a recent United States Supreme Court decision handed down just days before *General Motors Corp.* was issued.

■ The high court clarified that relief under 42 United States Code section 1983 (section 1983) for commerce clause violations is limited when those violations concern state taxation.[5] (*National Private Truck, supra,* 515 U.S. at pp. 586-588 [115 S.Ct. at pp. 2354-2355].) "[P]rinciples of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." (*Id.* at p. 586 [115 S.Ct. at p. 2354].) This reluctance to interfere with state taxation is soundly based: " 'It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.' " (*Ibid.*)

The limitation upon *federal courts* granting relief in state tax cases is long settled. Federal courts may not enjoin the collection of state taxes nor

---

[4]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (42 U.S.C. § 1983.)

[5]Principles governing state taxation are generally applicable to local taxation by municipalities as political subdivisions of the state. (See *Fair Assessment in Real Estate Assn.* v. *McNary* (1981) 454 U.S. 100, 105-106 [102 S.Ct. 177, 180-181, 70 L.Ed.2d 271] [applying state taxation principles to county property tax].)

issue declaratory judgments on the constitutionality of state taxes " 'where a plain, speedy and efficient remedy may be had in the courts of such State.' " (*National Private Truck, supra,* 515 U.S. at pp. 586-588 [115 S.Ct. at pp. 2354-2355].) Also, federal courts may not entertain damages actions under section 1983 against state taxes "when state law furnishes an adequate legal remedy." (*National Private Truck, supra,* at p. 587 [115 S.Ct. at p. 2355]; citing *Fair Assessment in Real Estate Assn.* v. *McNary, supra,* 454 U.S. at p. 116 [102 S.Ct. at p. 186].)

 A lingering question, answered in the affirmative by *National Private Truck,* was whether *state courts* should also be reluctant to grant federal civil rights relief in state tax cases when state law furnishes an adequate remedy. The principle of federal constraint in the area of state taxation applies not only to federal courts, but also to federal legislation. Section 1983 itself must be interpreted "in light of the strong background principle against federal interference with state taxation." (*National Private Truck, supra,* 515 U.S. at p. 589 [115 S.Ct. at p. 2355].) So interpreted, section 1983 "does not call for *either* federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists." (*National Private Truck, supra,* at p. 589 [115 S.Ct. at p. 2355], italics added.) An adequate state refund remedy precludes equitable relief under section 1983 in every court, and thus also precludes the associated recovery of attorney fees. (*National Private Truck, supra,* at pp. 585, 591-592 [115 S.Ct. at pp. 2353-2354, 2356-2357].)

General Motors acknowledges *National Private Truck,* but argues that the case is limited to equitable relief alone, and does not preclude section 1983 damages in a state taxation case adjudicated in state court. General Motors is correct that the facts of *National Private Truck* did not reach damages, but General Motors is wrong to say that the reasoning of *National Private Truck* did not reach damages.

*National Private Truck* concerned only equitable relief because damages in the form of a tax refund were already precluded by established section 1983 law prohibiting section 1983 monetary claims against states. (*National Private Truck, supra,* 515 U.S. at p. 588, fn. 5 [115 S.Ct. at p. 2355].) States and state officials acting in their official capacities are not "persons" under section 1983 and so are not amenable to suits for damages under the civil rights law. (*Will* v. *Michigan Dept. of State Police* (1989) 491 U.S. 58, 71 [109 S.Ct. 2304, 2312, 105 L.Ed.2d 45].) Equitable relief against state officials is generally available under section 1983 because " 'official-capacity actions for prospective relief are not treated as actions against the

State.' " (*Will, supra,* at p. 71, fn. 10 [109 S.Ct. at p. 2312].) Thus, *National Private Truck* had only to consider equitable actions, not damage actions.

The situation differs here: General Motors's refund actions are against a municipality, not a state. Unlike states, municipalities are "persons" and so can be sued directly under section 1983 for monetary relief where their execution of official policy is allegedly unconstitutional. (*Monell* v. *New York City Dept. of Social Services, supra,* 436 U.S. at p. 690 [98 S.Ct. at pp. 2035-2036].) We, therefore, must consider whether the federal principle of noninterference with state (and local) taxation precludes section 1983 monetary relief in a state court action against a municipal tax. This narrow situation is the only one among state tax actions under section 1983 not expressly precluded by United States Supreme Court precedent. While the high court has not *expressly* foreclosed the section 1983 action General Motors asserts, its interpretation of section 1983 compels the foreclosure.

As noted above, the principle of federal constraint in the area of state taxation applies not only to federal courts, but also to federal legislation. The United States Supreme Court found that section 1983 itself must be interpreted "in light of the strong background principle against federal interference with state taxation." (*National Private Truck, supra,* 515 U.S. at p. 589 [115 S.Ct. at p. 2355].) No court, whether federal or state, may award section 1983 equitable relief in a state taxation action when the state provides an adequate legal remedy. (*National Private Truck, supra,* at p. 589 [115 S.Ct. at pp. 2355-2356].) Since section 1983 monetary relief against states was already precluded by other principles, the court referred only to the preclusion of equitable relief. (*National Private Truck, supra,* at p. 588, fn. 5 [115 S.Ct. at p. 2355].) Nevertheless, it is clear that the court's interpretation of section 1983 would have precluded section 1983 monetary relief against states if the states had not already been immune, and does preclude such relief against municipalities that are not so immune.

Section 1983 is circumscribed by the federal principle of noninterference with state taxation, and that principle is not limited to equitable relief. Both damages claims and equitable actions interfere with state tax systems: "The recovery of damages under the Civil Rights Act first requires a 'declaration' or determination of the unconstitutionality of a state tax scheme that would halt its operation." (*Fair Assessment in Real Estate Assn.* v. *McNary, supra,* 454 U.S. at p. 115 [102 S.Ct. at p. 186].) The United States Supreme Court thus regards damages claims to be "fully as intrusive" as equitable actions. (*Id.* at p. 113 [102 S.Ct. at pp. 184-185].) Such federal intrusion is contrary to " 'the rightful independence of state governments.' " (*Id.* at pp. 115-116

[102 S.Ct. at p. 186].) Federal courts are therefore barred from awarding section 1983 damages in a state taxation action when an adequate state remedy exists. (*Fair Assessment in Real Estate Assn.* v. *McNary*, *supra*, at pp. 115-116 [102 S.Ct. at pp. 185-186].)

*Fair Assessment in Real Estate Assn.* v. *McNary* concerned an action in federal court, but the ruling barring section 1983 damages actions was not dependent on that fact. As the United States Supreme Court later explained, it was "the principle of noninterference with state taxation [that] led us to construe § 1983 narrowly." (*National Private Truck, supra,* 515 U.S. at p. 589 [115 S.Ct. at p. 2356].) In explicit reliance upon that "same principle" of noninterference, the court has barred equitable actions in state courts. (*Id.* at p. 590 [115 S.Ct. at p. 2356].) In sum, *Fair Assessment in Real Estate Assn.* v. *McNary* bars section 1983 damages actions challenging state taxation in federal court, while *National Private Truck* bars section 1983 equitable actions challenging state taxation in state courts. (*Fair Assessment in Real Estate Assn.* v. *McNary, supra,* 454 U.S. at p. 116 [102 S.Ct. at p. 186]; *National Private Truck, supra,* at p. 591 [115 S.Ct. at pp. 2356-2357].) Both cases are founded upon the federal principle of noninterference in state tax cases. The conclusion drawn when these two cases are jointly considered is inescapable: section 1983 actions challenging state taxation are barred, whether the actions seek damages or equitable relief, and whether brought in federal or state court, provided an adequate state remedy exists.

A citizen, like General Motors, may not maintain a section 1983 action challenging municipal taxation when an adequate state remedy exists. We are not alone in this conclusion. The New Jersey Supreme Court directed the dismissal of a section 1983 damages claim challenging a city property tax where an adequate state remedy existed. (*General Motors Corp.* v. *City of Linden* (1996) 143 N.J. 336 [671 A.2d 560, 561, 564-567] (*City of Linden*).) Other state courts have likewise barred section 1983 damages claims challenging local taxes where an adequate state remedy exists. (*Murtagh* v. *County of Berks* (Pa.Commw. Ct. 1998) 715 A.2d 548, 549, 551-552 [county property tax]; *Camps Newfound/Owatonna* v. *Harrison* (1998) 1998 Me. 20 [705 A.2d 1109, 1110-1112] [town property tax].)

General Motors offers no cases contrary to these holdings. Its only response is to fault *City of Linden* and other cases for applying state taxation principles while "fail[ing] to address the distinction between a state tax and a local tax." Just what distinction General Motors believes to have been blurred is uncertain.

The only meaningful distinction between state and local taxes as concerns section 1983 is that damages actions against the state, but not municipalities,

are precluded by the civil rights statute's definition of "person." (*National Private Truck, supra,* 515 U.S. at p. 588, fn. 5 [115 S.Ct. at p. 2355]; *Will* v. *Michigan Dept. of State Police, supra,* 491 U.S. at pp. 62-64, 70 [109 S.Ct. at pp. 2307-2309, 2312].) The court in *National Private Truck* therefore had no reason to consider whether the federal principle of noninterference precluded a section 1983 damage claim against a state's tax because the claim was already precluded under a definitional interpretation of section 1983. (*National Private Truck, supra,* at p. 588, fn. 5 [115 S.Ct. at p. 2355].) State court decisions following *National Private Truck* have respected this distinction between the definitional interpretation of section 1983 as applied to states and municipalities. The *City of Linden* court and other courts in agreement with it did not mistake municipalities for "nonpersons" and bar section 1983 damages actions on that definitional basis. Instead, the court rulings were founded upon reading section 1983 in light of the federal principle of noninterference in cases of state (and local) taxation. To the extent that General Motors proposes a distinction between state and local taxes as regards application of the noninterference principle, it is wrong. The federal principle of noninterference applies equally to taxation by states and municipalities as state political subdivisions. (See *Fair Assessment in Real Estate Assn.* v. *McNary, supra,* 454 U.S. at pp. 105-106, 115-116 [102 S.Ct. at pp. 180-181, 185-186] [county property tax is a "state tax" entitled to noninterference].)

## DISPOSITION

The judgment is reversed and the cases remanded to the trial court for entry of judgment in favor of General Motors on its tax refund claim. (Gov. Code, §§ 935, subd. (a), 940.4, 945; S.F. Mun. Code, pt. III, § 1017.) General Motors is not entitled to any relief or attorney fees under federal civil rights law. (42 U.S.C. §§ 1983, 1988(b).) General Motors shall recover costs on appeal.

Swager, J., and Marchiano, J., concurred.

A petition for a rehearing was denied February 16, 1999, and the petitions of both appellant and respondent for review by the Supreme Court were denied April 14, 1999.