[No. B127816. Second Dist., Div. Two. Mar. 27, 2000.]

UNION OIL COMPANY OF CALIFORNIA, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

[No. B130089. Second Dist., Div. Two. Mar. 27, 2000.]

LITTON SYSTEMS, INC., Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

## COUNSEL

James K. Hahn, City Attorney, Ronald Tuller, Assistant City Attorney, and Miguel A.Dager, Deputy City Attorney, for Defendant and Appellant.

Bewley, Lassleben & Miller, Jeffrey S. Baird, Joseph A. Vinatieri, Kevin P. Duthoy and Jason C. DeMille for Plaintiff and Respondent Union Oil Company of California.

Victoria T. McGhee; William Christopher Black; Stephen F. McAndrew; Dani H. Rogers; and Craig M. McCabe for Plaintiff and Respondent Litton Systems, Inc.

Ajalat, Polley and Ayoob, Charles R. Ajalat, Terry L. Polley and Richard J. Ayoob as Amici Curiae on behalf of Plaintiff and Respondent Union Oil Company of California.

## OPINION

**BOREN, P. J.**—The City of Los Angeles (hereinafter, the City) appeals from a judgment awarding approximately $3 million (plus interest and attorney fees) in an action brought by Union Oil Company of California (hereinafter, UNOCAL) for a refund of business taxes paid to the City for tax years 1993, 1994 and 1995.[1] Contrary to the City's contention, as the trial court properly found, the City's taxing scheme violates state and federal constitutional proscriptions against restraint of commerce with respect to

---

[1] This case has been consolidated with *Litton Systems, Inc. v. City of Los Angeles* (B130089) (hereinafter, Litton), a related case which presents identical legal issues regarding the taxpayer's right to a refund of taxes paid to the City. The parties in this consolidated case stipulated at trial that they would be bound by the trial court's legal rulings in the present UNOCAL matter. Judgment was entered in favor of Litton in the amount of $385,807 (plus interest and attorney fees).

in-city manufacturers selling outside the City.[2] However, UNOCAL is not entitled under 42 United States Code sections 1983 and 1988 to an award of attorney fees incurred in vindicating its rights under the commerce clause of the federal Constitution. (U.S. Const., art. I, § 8, cl. 3.)

## FACTUAL AND PROCEDUAL SUMMARY

The City imposes two alternative taxes upon those engaging in business within its borders. The primary tax is generally referred to as the "business tax," which is set forth in Los Angeles Municipal Code sections 21.50 through 21.198, and includes a tax on wholesale manufacturing and selling. (L.A. Mun. Code, § 21.166.) A secondary tax, which is an alternative tax to the business tax, is referred to as a "payroll expense tax" and is assessed against the in-city payroll expenses of businesses operating within the City. (L.A. Mun. Code, §§ 21.11.1 to 21.11.7.)

UNOCAL manufactures and sells petroleum products. As a result of its business activities conducted within the City, UNOCAL paid a business tax on the following three aspects of its in-city business: (1) gross receipts from the sale of products manufactured and sold by it within the City (so-called in-to-in); (2) gross receipts from the sale of products manufactured by it within the City but sold outside of the City (so-called, in-to-out); and (3) gross receipts from the sale of products manufactured by it outside the City but which it sold within the City (so-called, out-to-in).

In the proceedings below, the trial was without a jury and based upon stipulated facts. UNOCAL sought a refund of business taxes paid by it with respect to gross receipts from its in-to-out and out-to-in sales activities. The City now, however, does not contest and has paid UNOCAL a tax refund for its out-to-in sales. UNOCAL did not seek a refund of taxes paid by it for its in-to-in sales. Therefore, the only business taxes at issue for which UNOCAL now seeks a refund are those paid by it on its in-to-out sales.

The trial court's statement of decision analyzed and applied the reasoning in *General Motors Corp. v. City of Los Angeles* (1995) 35 Cal.App.4th 1736 [42 Cal.Rptr.2d 430] (hereinafter, *G.M. v. Los Angeles*), involving an analogous tax scheme with manufacturing and selling taxes, and awarded UNOCAL a full refund of business taxes paid by it on its in-to-out sales. The

---

[2]The City had also originally contended that any business tax refund due to UNOCAL should be offset by UNOCAL's unpaid payroll expense tax liability to the City. In its reply brief before this court, the City withdrew its payroll expense tax offset contention.

trial court entered judgment in favor of UNOCAL, including an award of attorney fees.

## DISCUSSION

I. *The City's taxing scheme is an unconstitutional restraint on commerce with respect to in-to-out transactions.*

The payroll business license tax scheme at issue here has two separate taxing ordinances and a specific exemption. The two distinct taxes are the payroll tax[3] and the business license tax[4] (which itself is composed of alternative taxes, measured by gross receipts, such as the taxes on manufacturing, the taxes on selling, the taxes on service, etc.). The business license tax is the City's primary tax. The payroll tax was thereafter enacted in 1984, many years after the business license tax was in effect, with the apparent intent to include some taxpayers who were exempt under the business license tax.[5]

In enacting the payroll tax, if the City had limited it only to the taxpayers it attempted to add, such selective discrimination may have come under adverse constitutional scrutiny. Perhaps for this reason, the City imposed the payroll tax on all taxpayers. But, to mitigate the burden on taxpayers, and arguably to obviate a politically unacceptable tax increase, the City provided for an exemption from the business license tax for taxpayers required to pay the payroll tax, and vice versa. (L.A. Mun. Code, §§ 21.11.14, 21.11.15, 21.24.)

■ The tax scheme in the present case is analogous to that discussed by Division Four of this court in *G.M. v. Los Angeles, supra,* 35 Cal.App.4th 1736. There, the court found that the City had a separate tax on selling and a separate tax on manufacturing, and that local manufacturers who paid a

---

[3]Los Angeles Municipal Code section 21.11.2 provides, in part: "A tax for general revenue purposes is hereby imposed upon every person who engages in business and, in connection therewith, engages, hires, employs or contracts with one or more individuals as employees to perform work or render services in whole or in part within the City."

[4]Los Angeles Municipal Code section 21.03 provides, in part: "[A] business tax must be paid by every person engaged in any of the businesses or occupations specified in Sections 21.50 to 21.98, inclusive, of this article; and a business tax is hereby imposed . . . ."

[5]As indicated by the November 1983 Majority Report of the Finance and Revenue Committee to the City Council, of which we have taken judicial notice (Evid. Code, § 452, subd. (h)): "The Payroll Expense Tax will be paid by businesses now exempt from the Business Tax [C]ode, including the liquor industry, railroads, air freight carriers, steamboats, telegraph, and electric companies. Businesses that currently pay a Business Tax will not have their tax increased as a result of the Payroll Expense Tax." (City Council File No. 83-0600 S31.)

manufacturing tax were exempted from the selling tax. The exemption was implied, unlike the payroll tax and business license tax scheme here, which has separate taxing ordinances and a specific exemption.

The court in *G.M. v. Los Angeles, supra,* 35 Cal.App.4th 1736, held that a tax scheme under which a manufacturer selling in the City pays a selling tax if it is located out of the City, but not if the manufacturer is located in the City, unconstitutionally discriminates. Los Angeles Municipal Code section 21.166 thus "on its face" discriminated "per se" in favor of local manufacturers and against manufacturers from out of the City, and violated state and federal constitutional proscriptions against restraint on the flow of commerce. (35 Cal.App.4th at pp. 1743-1749, 1752.) The court analyzed the United States Supreme Court's opinions in *Tyler Pipe Industries v. Dept. of Revenue* (1987) 483 U.S. 232 [107 S.Ct. 2810, 97 L.Ed.2d 199] (hereinafter, *Tyler*), and *Armco, Inc. v. Hardesty* (1984) 467 U.S. 638 [104 S.Ct. 2620, 81 L.Ed.2d 540] (hereinafter, *Armco*), and concluded the City cannot exempt some sellers from a tax and impose the tax on other sellers.

As the court explained in *G.M. v. Los Angeles, supra,* 35 Cal.App.4th at pages 1748-1749: "There are no relevant differences among the taxing schemes of West Virginia [discussed in *Armco*], Washington [discussed in *Tyler*], and the City of Los Angeles. In all three there is a separate tax on manufacturing and a separate tax on selling with the local manufacturer functionally or actually exempted from the selling tax. As a consequence, notwithstanding any differential in the actual rate or amount of tax, they are discriminatory on their face in favor of in-city manufacturers. This is so even though section 21.166 [of the Los Angeles Municipal Code] provides dual categories subject to taxation, one referring to 'manufacturing and selling' and the other referring to 'selling' only. The labels applied to different taxpayers are not determinative if the practical effect of the taxing scheme is to impose a heavier tax burden on out-of-city businesses that compete within the city market than it imposes on residents that also engage in commerce within the city. [Citation.] Here, as in *Armco*, the local manufacturer pays the manufacturing tax but not the selling tax. Consequently, the city's taxing scheme discriminates against all other manufacturers that must pay the tax on selling. On its face, section 21.166 is discriminatory."

Likewise, in the present case, the tax scheme involving the payroll tax and the business license tax violates the direct discrimination test. The tax scheme directly discriminates against interstate and intercity taxpayers doing business in the City. A Los Angeles business paying the payroll tax in Los Angeles is exempt from the business license tax (L.A. Mun. Code, § 21.24),

although the intercity or interstate business performing the same activity in the City must pay the business license tax. Such a tax scheme suffers from the same type of unconstitutional discrimination found in *G.M.* v. *Los Angeles*.

In addition to applying a direct discrimination test and finding facially unconstitutional Los Angeles Municipal Code section 21.166, the court in *G.M. v. Los Angeles* extended its analysis to test the discriminatory code provision for internal consistency. As the court explained: "The internal consistency test is a federal doctrine that requires the court to assume that all taxing jurisdictions have a taxing scheme exactly the same as the taxing scheme under review. With that assumption in mind, General Motors argued that it, as an out-of state manufacturer selling in Los Angeles, is subjected to two taxes: a selling tax imposed by Los Angeles and a manufacturing tax imposed by the jurisdiction where its manufacturing facility is located. In contrast, a Los Angeles manufacturer selling in Los Angeles pays only a manufacturing tax. *A Los Angeles manufacturer pays two taxes when it sells outside of the city—one on 100 percent of its gross receipts as an in-city manufacturer and a second on its apportioned gross receipts according to its selling activity in the jurisdiction where the sale occurs.* . . . [¶] . . . [¶] . . . In the simplest terms, an additional tax is imposed only because and only when a sale crosses the city's boundaries, imposing an additional burden on the importer/exporter, e.g., the out-of-city seller and *the in-city manufacturer selling outside of the city.* . . .

"*Section 21.166 [of the Municipal Code of Los Angeles] imposes an unallocated tax on 100 percent of the gross receipts of an in-city manufacturer, and the same gross receipts are subject to a selling tax in an apportioned amount by different jurisdictions where sales actually occur, e.g., the City of Oakland and the City and County of San Francisco.* The same is true in the reverse situation where the City of Los Angeles imposes a tax on selling within its boundaries by an out-of-city manufacturer, which is taxed on manufacturing elsewhere. *In both instances, the additional tax is triggered only when the transaction crosses city boundaries. It is also clear that when an in-city manufacturer sells within the city there is no tax on selling, giving the local manufacturer a competitive advantage in its home market. It is clear that the city's taxing scheme impedes commerce among the states and the cities and counties of California.*" (*G.M. v. Los Angeles, supra,* 35 Cal.App.4th at pp. 1750-1752, italics added, fn. omitted.)

It is thus apparent that *G.M. v. Los Angeles* directly addressed the issue of the constitutionality of the applicable municipal code sections and found their imposition of the tax to in-to-out transactions constitutionally infirm

under the internal consistency test. A similar analysis compels a similar conclusion here. As required by the internal consistency test, we assume that all taxing jurisdictions have a taxing scheme identical to the City's business license tax and separate payroll tax. Local businesses paying the business license tax are exempt from the payroll tax, yet other taxpayers engaged in intercity and interstate commerce are obligated to pay the payroll tax.

The unconstitutionality is apparent in the following typical situation: a taxpayer with a large percentage of its payroll in one city sells its product in a jurisdiction where it has little or no payroll. We assume that both jurisdictions have a taxing scheme similar to that of the City, whereby the taxpayer in the City selling across the City lines would pay the payroll tax in the City and be subject to the business license tax in the other jurisdiction. And, the taxpayer outside the City would pay two taxes, the City's business license tax and the other jurisdiction's payroll tax. However, the taxpayer located inside the City and selling inside the City would pay only one tax, the City's payroll tax. Giving a local manufacturer such a competitive advantage in its home market is prohibited under the commerce clause, as explained in *G.M. v. Los Angeles*, *Armco*, and *Tyler*.[6]

The City's attempt to discount the internal consistency test as a mere tool and not a freestanding constitutional requirement is unpersuasive. "A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States which might impose an identical tax." (*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.* (1995) 514 U.S. 175, 185 [115 S.Ct. 1331, 1338, 131 L.Ed.2d 261].)

Moreover, the City's reliance on the truism that the commerce clause does not forbid successive taxes on distinct taxable events does not avoid the requirement of satisfying the internal consistency rule. Indeed, the internal consistency test applies by its nature in factual contexts where there is a potential for such successive taxation. (See, e.g., *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, *supra*, 514 U.S. at p. 185 [115 S.Ct. at p. 1338]; *Goldberg v. Sweet* (1989) 488 U.S. 252, 260-261 [109 S.Ct. 582, 588-589, 102 L.Ed.2d 607].)

---

[6]The discrimination of course also affects the reverse situation, where the bulk of the payroll is in a location outside the City, and the sales occur in the City. Such taxpayers pay the City's business license tax and are exempt from the City's payroll tax, as long as all of their activity is in the City. Under the internal consistency test, however, when they sell across City lines, they are subject to two taxes (the City's business license tax and the other jurisdiction's payroll tax), while businesses solely in the City pay only one tax.

Nor is there any merit to the City's claim that its business tax scheme does not discriminate in violation of the commerce clause against in-to-out sales because manufacturers that sell outside the city are not in direct competition with the favored in-to-in manufacturers. The City essentially asserts that in-city manufacturers selling within the City operate in a different market from in-city manufacturers selling outside of the City, and thus that discrimination between them may not arise. However, there is nothing in the record below to support the notion that the petroleum market may be artificially defined by reference to municipal boundaries. To the contrary, common sense dictates that a producer/seller of gasoline within the City is in fact in competition with a producer/seller of gasoline just outside or even miles away from the City boundaries.[7]

Not only is the City's analysis factually unsupported, but it is legally unfounded. The City relies primarily on *General Motors Corp. v. Tracy* (1997) 519 U.S. 278 [117 S.Ct. 811, 136 L.Ed.2d 761] (hereinafter, referred to as *Tracy*). In *Tracy*, the Supreme Court considered whether Ohio's tax on spot sellers of natural gas withstood commerce clause scrutiny where local public utilities were exempted from the tax. Natural gas had been deregulated, allowing independent suppliers for the first time to sell to industrial users in competition with the public utilities. General Motors, as a large consumer of natural gas seeking to purchase from an independent distributor/importer of natural gas, challenged Ohio's policy of charging tax only on independently sold natural gas and exempting tax on natural gas sold by public utilities.

The analysis in *Tracy* was premised on the fact that the natural gas public utilities offered to residential customers a bundled product, which was different from the product provided by independent dealers who made spot sales to industrial users. Under applicable Ohio law, the public utilities enjoyed a semimonopoly but were required to meet a panoply of public responsibilities, such as providing universal service to all consumers wherever located, maintaining specified reserves, and operating programs for continued service to low-income or indigent customers. (*Tracy, supra,* 519 U.S. at pp. 297-298 [117 S.Ct. at pp. 823-824].) With such a focus on the unique role of public utilities, *Tracy* concluded that public utilities and independent suppliers actually sold different products and thus were not in competition.

The Supreme Court in *Tracy* thus concluded: ". . . Ohio's regulatory response to the needs of the local natural gas market have resulted in a

---

[7]We also note that the City's logic becomes suspect when it is applied to out-to-in transactions, where the City concedes UNOCAL is entitled to a refund.

noncompetitive bundled gas product that distinguishes its regulated sellers from independent marketers to the point that the enterprises should not be considered 'similarly situated' for the purposes of a claim of facial discrimination under the Commerce Clause. [Petitioner's] argument that the State discriminates between regulated local gas utilities and unregulated marketers must therefore fail." (519 U.S. at p. 310 [117 S.Ct. at p. 829].) As the present case does not involve a comparison between the manufacture or sale of a standard product versus one bundled with a myriad of enhanced consumer benefits, or otherwise involve different products, the City's reliance on *Tracy* is unavailing.[8]

Equally unavailing is the City's reliance on *Alaska v. Arctic Maid* (1961) 366 U.S. 199 [81 S.Ct. 929, 6 L.Ed.2d 227], a case discussed in *Tracy*. The Supreme Court in *Arctic Maid* held that a taxing structure did not offend the commerce clause when it imposed a 4 percent tax on the value of fish frozen onboard ships by Alaskan fishermen who sent the fish outside the state for canning, but only imposed a 1 percent tax on the value of identical fish products canned in the state. The court reasoned that the two taxpayers served different markets and were not in direct competition with each other. (*Id.* at p. 204 [81 S.Ct. at p. 932].) In the present case, *Arctic Maid* is inapplicable since the record does not support the existence of distinct consumer markets not in competition with each other. *Arctic Maid* was also an atypical commerce clause discrimination situation, unlike here, where the comparison is with two in-city manufacturers, one selling in the City and the other selling both within and without the City.

Accordingly, *G.M. v. Los Angeles* was correctly decided and its reasoning is applicable here. The City's payroll tax and business licensing tax scheme violates both state and federal constitutional proscriptions against restraint of commerce (*G.M. v. Los Angeles, supra,* 35 Cal.App.4th at pp. 1742-1743) with respect to in-city manufacturers selling outside the City. The trial courts properly ordered the refunds of manufacturing taxes.

II. *The trial courts erred in awarding attorney fees under 42 United States Code sections 1983 and 1988(b).*

■ UNOCAL asserts that a judgment in its favor entitles it to attorney fees. UNOCAL sought not only a refund under state law, but also damages equal to a refund for violations of rights secured by the state and federal

---

[8]Moreover, there is no indication in *Tracy* that the Supreme Court intended to overturn or in any fashion dilute the holdings in *Tyler, supra,* 483 U.S. 232, or *Armco, supra,* 467 U.S. 638, both of which were properly relied upon in *G.M. v. Los Angeles, supra,* 35 Cal.App.4th 1736, 1745, 1748-1749, as compelling authority.

Constitutions. A municipality's enforcement of an ordinance, which violates federal constitutional rights, including commerce clause protections, generally renders it liable under federal civil rights laws. (42 U.S.C. § 1983; *Dennis v. Higgins* (1991) 498 U.S. 439, 443-451 [111 S.Ct. 865, 868-873, 112 L.Ed.2d 969]; *General Motors Corp. v. City and County of San Francisco* (1999) 69 Cal.App.4th 448, 457 [81 Cal.Rptr.2d 544] (hereinafter, *G.M. v. San Francisco*).) One who prevails in vindicating its civil rights is entitled to attorney fees. (42 U.S.C. § 1988(b).)

However, the United States Supreme Court clarified these general principles in *National Private Truck Council, Inc. v. Oklahoma Tax Com.* (1995) 515 U.S. 582 [115 S.Ct. 2351, 132 L.Ed.2d 509] (hereinafter, *National Private Truck*). It ruled as follows: "Because [taxpayers] had an adequate legal remedy, the Oklahoma courts could not have awarded either declaratory or injunctive relief against the state taxes under [42 U.S.C.] § 1983. It follows that when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988." (*Id.* at p. 592 [115 S.Ct. at p. 2357].) In the present case, there was an adequate legal remedy—a refund of taxes—which the trial courts used. Attorney fees under section 1988 are thus precluded.

As noted in *G.M. v. San Francisco, supra,* 69 Cal.App.4th at page 457, the court in *G.M. v. Los Angeles, supra,* 35 Cal.App.4th 1736, which awarded attorney fees, did not have the opportunity to consider the opinion in *National Private Truck*. The Supreme Court in *National Private Truck* emphasized "the longstanding federal reluctance to interfere with state taxation." (515 U.S. at p. 587 [115 S.Ct. at p. 2355].) " 'It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.' " (*Id.* at p. 586 [115 S.Ct. at p. 2354].)

Interpreting 42 United States Code section 1983 with "the strong background principle against federal interference with state taxation" (*National Private Truck, supra,* 515 U.S. at p. 589 [115 S.Ct. at p. 2355]), *National Private Truck* concluded that section 1983 "does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists." (515 U.S. at p. 589.) However, contrary to UNOCAL's position and the reasoning of the trial court, *National Private Truck* is not limited solely to cases in which taxpayers seek injunctive or declaratory relief.

As explained in *G.M. v. San Francisco, supra,* 69 Cal.App.4th at pages 458-459, because 42 United States Code section 1983 monetary relief

against the states was already precluded by other principles,[9] the court in *National Private Truck* referred only to the preclusion of equitable relief. "Nevertheless, it is clear that the court's interpretation of section 1983 would have precluded section 1983 monetary relief against the states if the states had not already been immune, and does preclude such relief against municipalities that are not so immune. [¶] Section 1983 is circumscribed by the federal principle of noninterference with state taxation, and that principle is not limited to equitable relief. Both damages claims and equitable actions interfere with state tax systems: 'The recovery of damages under the Civil Rights Act first requires a "declaration" or determination of the unconstitutionality of a state tax scheme that would halt its operation.' (*Fair Assessment in Real Estate Assn. v. McNary* [(1981)] 454 U.S. [100,] 115 [102 S.Ct. 177, 186, 70 L.Ed.2d 271].) The United States Supreme Court thus regards damages claims to be 'fully as intrusive' as equitable actions. (*Id.* at p. 113 [102 S.Ct. at pp. 184-185].) Such federal intrusion is contrary to ' "the rightful independence of state governments." ' (*Id.* at pp. 115-116 [102 S.Ct. at pp. 185-186].)" (*G.M. v. San Francisco, supra,* 69 Cal.App.4th at p. 459.)

Pursuant to *Fair Assessment in Real Estate Assn. v. McNary, supra,* 454 U.S. at pages 115-116 [102 S.Ct. at pages 185-186], federal courts are therefore barred from awarding 42 United States Code section 1983 damages in a state taxation action when an adequate state remedy exists. In explicit reliance on the "same principle" of noninterference, the court in *National Private Truck, supra,* 515 U.S. at page 590 [115 S.Ct. at page 2356], barred equitable actions in state courts. "Both cases are founded upon the federal principle of noninterference in state tax cases. The conclusion drawn when these two cases are jointly considered is inescapable: section 1983 actions challenging state taxation are barred, whether the actions seek damages or equitable relief, and whether brought in federal or state court, provided an adequate state remedy exists." (*G.M. v. San Francisco, supra,* 69 Cal.App.4th at p. 460.)

The Supreme Court's opinion in *Alden v. Maine* (1999) 527 U.S. 706 [119 S.Ct. 2240, 144 L.Ed.2d 636] was decided after *G.M. v. San Francisco*, but does not undermine its holding barring 42 United States Code section 1983 actions in state court taxation matters and thus precluding attorney fees. *Alden* held that because of state sovereign immunity, a state government may not be sued in state court, even on a federal cause of action, without the

---

[9] Damage actions against the state, but not against municipalities, are precluded by the civil rights statute's definition of "person." (*Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 68-71 [109 S.Ct. 2304, 2310-2312, 105 L.Ed.2d 45], as noted in *National Private Truck, supra,* 515 U.S. at p. 588, fn. 5 [115 S.Ct. at p. 2355].)

state's consent. *Alden* also observed that one of the long-standing limits on sovereign immunity is that it "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." (*Alden, supra,* 527 U.S. at p. 756 [119 S.Ct. at p. 2267.) Consistent with this observation, the principles of federalism do not trump the supremacy clause when federal legislation enforcing the federal Constitution is at issue, as here, where federal legislation is the premise of a cause of action against a municipality.

Nonetheless, there is no dispute that civil rights actions may be maintained against municipalities. The only dispute is whether such actions may be maintained in all situations; i.e., in a tax refund matter where the taxpayer has an adequate state law remedy. We find, as previously discussed, that a civil rights action may not be maintained in that context because of federal principles of noninterference in state tax cases.

Finally, there is no merit to UNOCAL's alternative position that even accepting the holding in *G.M. v. San Francisco,* the trial court had discretion to award attorney fees. There is no authority cited for such a proposition. Indeed, the general rule is that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.) UNOCAL points to no other statute or any agreement authorizing attorney fees.

Accordingly, taxpayers, like UNOCAL and Litton, may not maintain a 42 United States Code section 1983 action challenging municipal taxation when an adequate state remedy exists. Since the adequate state remedy of a tax refund exists, the taxpayers are not entitled to any relief or attorney fees under the federal civil rights law. (42 U.S.C. §§ 1983, 1988(b).)

## DISPOSITION

The awards of attorney fees are reversed and vacated. In all other respects, the judgments are affirmed. UNOCAL and Litton are entitled to costs on appeal.

Nott, J., and Cooper, J., concurred.

A petition for a rehearing was denied March 27, 2000, and apellant's petition for review by the Supreme Court was denied June 28, 2000.