[No. B031891. Second Dist., Div. Three. Oct. 5, 1988.]

MAY DEPARTMENT STORES COMPANY, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

COUNSEL

James K. Hahn, City Attorney, Pedro B. Echeverria and Ronald A. Tuller, Assistant City Attorneys, for Defendant and Appellant.

Parker, Milliken, Clark, O'Hara & Samuelian, Nowland C. Hong and Leslie W. Mullins for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Defendant and appellant City of Los Angeles (the City) appeals the judgment entered after a court trial in favor of plaintiff and respondent May Department Stores Company (May Co.).

Because the City's Ruling No. 19 fails to apportion fairly finance charge income attributable to May Co.'s out-of-city deferred payment retail credit sales based upon the amount of activity generating that income taking place within the city, the trial court properly found the rule arbitrary. Further, the apportionment formula of Ruling No. 14, utilized by the trial court in lieu of Ruling No. 19, was designed to apportion gross receipts arising out of retail sales and is not applicable to finance charges. Therefore, the judgment is affirmed in part and reversed in part.

FACTUAL AND PROCEDURAL BACKGROUND[1]

May Co.'s complaint sought recovery of $17,042.80 plus interest from the City as a refund of 1980 and 1981 business taxes attributable to finance charges earned on deferred payment retail credit sales made at May Co.'s out-of-city stores and apportioned under Ruling No. 19.

The complaint also prayed for a declaration that the method used by the City to tax finance charges earned on goods sold outside the city was unconstitutional.

1. *The City's business tax.*

The City imposes a business or gross receipts tax upon businesses operating within its boundaries pursuant to Los Angeles Municipal Code (LAMC) sections 21.00 through 21.197. May Co. operates retail stores both

---

[1] The record on appeal does not include a reporter's transcript of the court trial below. However, there is no substantial dispute as to the facts as the matter was submitted to the trial court on stipulations. The parties stipulated that "May Co. has exhausted all required administrative remedies as a prerequisite to bringing this action."

within and outside the boundaries of the city. All of May Co.'s selling and retailing activities occur at the store making the sale. Additionally, certain accounting activities relating to the "input of the information on deferred payment retail credit sales, which is used for billings and the basis for finance charge gross receipts, as well as some of the collection of payments on charge accounts" occur at the retail store.

In addition to receipts from the sale of retail goods, May Co. earns finance charges in connection with its deferred payment credit sales. These finance charges accrue at a prescribed percentage of the unpaid balance. May Co. maintains its accounting center in the city "from which it performed credit, billing, collection and accounting activities in connection with retail deferred payment credit sales made within and without the [c]ity and any finance charges resulting therefrom."

"Prior to 1973, the inputting of all information for credit sales occurred at 'Central Headquarters' of May Co. in . . . Los Angeles. This processing of information was performed by input clerks who received the credit sales data from the individual retail stores. [¶] By 1973, May Co. had installed point of sale (POS) terminals at each retail store where the sale of goods and merchandise occur. These POS terminals then were employed for the inputting function on credit sales by [sales persons] in place of the input clerks at Central Headquarters in . . . Los Angeles. By the tax years 1980 and 1981, the input clerks in . . . Los Angeles had been eliminated, except for those processing credit adjustments and payments. Such adjustments do not include returns of goods or merchandise, which are processed at the retail stores. [¶] . . . . [¶] . . . . Invoicing credit sales requires twice the time as cash sales."

"Prior to tax year 1980, the City had accepted any reasonable basis for apportionment of the gross receipts from finance charges on May Co.'s out-of-[c]ity deferred payment retail credit sales based on activities carried on within the [c]ity, which in the case of May Co. was at 10.72% for several tax years prior to and including 1979." The 10.72 percent apportionment ratio accepted by the City in tax years prior to 1980 had been derived by comparing May Co.'s sales payroll attributable to invoicing retail credit sales with May Co.'s accounting center credit department payroll.[2]

---

[2] The 10.72 percent included May Co.'s collection department expenses as a part of its accounting center payroll. May Co. had sought to exclude this portion of payroll from the accounting center because the City's tax is based upon gross receipts computed on an accrual basis without regard to bad debts. As so computed, May Co. argued the collection department activity does not increase the amount of taxable gross receipts and therefore should not be considered in apportioning income-generating activity. Exclusion of the collection department payroll from the comparison analysis would have resulted in an apportionment figure of approximately 8 percent.

## 2. *The city clerk's rulings.*

"Pursuant to LAMC Section 21.15(h), . . . , the City Clerk's Office has promulgated 'City Clerk's Rulings' which are administrative determinations to assist in the enforcement and processing of the Business Tax."

City Clerk Ruling No. 14 deals with "Persons Selling Goods, Wares and Merchandise Who have a Fixed Place of Business in Los Angeles." It attempts to apportion gross receipts from retail sales between activities taking place within the city and activities taking place outside the city. It permits a taxpayer to "deduct from 100% of gross receipts the percentage of gross receipts deemed to be directly attributable to selling activities carried on . . . outside the City . . . ." The ruling allows deductions of up to 30 percent for the location where the sale is negotiated or solicited, up to 20 percent for the location of the sales office which serves as the base of operations for sales activities, up to 10 percent for the location where orders or contracts are accepted and approved, up to 20 percent for any facility operated by the taxpayer where the goods are stored immediately prior to shipment or delivery and up to 5 percent each for the location which gives the order for or arranges for the shipment of articles sold, for the place where the billing procedures are performed, for the place where the collecting is performed and for the place to which merchandise is delivered by vehicles operated by the taxpayer.

Effective January 1, 1980, the office of the city clerk issued Ruling No. 19 which declared, for the purpose of apportioning gross receipts from finance charges arising from deferred payment retail credit sales, 50 percent of such receipts are attributable to the activities of solicitation, negotiation and consummation of the retail transaction and 50 percent of the receipts are attributable to the credit, billing, collection and accounting activities.

"The only reason for the use and application of Ruling No. 19 for tax years 1980 and 1981 by the City Clerk's Office, rather than the acceptance as in years prior thereto of any reasonable apportionment formula to apportion finance charges from out-of-[c]ity deferred payment retail credit sales was the promulgation of Ruling No. 19 itself."

"Under Ruling No. 19, it is the [c]ity's position that there can be no modification of the apportionment formula therein unless some or all of the accounting activities, such as credit approval/authorization, billing, collection and accounting in the case of May Co. occur outside the [c]ity."

## 3. *The trial court's ruling.*

The trial court determined "Los Angeles City Clerk's Ruling No. 19, as applied to plaintiff May Department Stores Company, is arbitrary,

capricious, unreasonable, improper, and invalid; . . ." In lieu of Ruling No. 19, the trial court found "City Clerk's Ruling No. 14 is the proper apportionment formula applicable to the determination of plaintiff May Department Stores Company's taxable gross receipts from the sale of goods, wares and merchandise and finance charges on out-of-[c]ity deferred payment retail credit sales; . . ."

In addition to awarding May Co. a refund for the tax years 1980 and 1981, the trial court awarded May Co. "interest as prescribed in Los Angeles Municipal Code Section 21.05(e) . . . ." Judgment was filed and entered in favor of May Co. and the City filed a timely appeal.

### CONTENTIONS

The City contends the business of advancing credit may be classified and taxed separately from the business of retail sales, and that Ruling No. 19 embodies a valid method of apportioning gross receipts from finance charges.

Also, the City asserts the trial court's award of prejudgment interest on May Co.'s refund must be reduced to the legal rate.

### DISCUSSION

1. *Standard of review.*

■ "[A] taxpayer who challenges an apportionment formula on constitutional grounds must show more than the possibility of erratic or unconstitutional application. 'One who attacks a formula of apportionment carries a distinct burden of showing by "clear and cogent evidence" that *it results* in extraterritorial values being taxed.' [Citations.]" (*City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 126 [93 Cal.Rptr. 1, 480 P.2d 953].)

"Since the underlying action was submitted and decided on stipulated facts, we are confronted solely with questions of law and make our own judgment independent of the trial court's determination. [Citations.]" (*United States Lines, Inc.* v. *State Bd. of Equalization* (1986) 182 Cal.App.3d 529, 534 [227 Cal.Rptr. 347]; *Cedars-Sinai Medical Center* v. *State Bd. of Equalization* (1984) 162 Cal.App.3d 1182, 1186 [208 Cal.Rptr. 837].)

2. *The City's ability to tax finance charges not in dispute.*

As May Co. correctly observes, much of the City's argument is directed to establishing its ability to tax gross receipts attributable to finance charges. The City "considers earning finance charges to be a separate business from

making sales" and asserts its ability to tax this separate business under LAMC section 21.108.[3]

It is not necessary, however, to decide whether LAMC section 21.108 applies to the finance charges in issue here because the taxability of such receipts is well established (*Roscoe Terrace* v. *City of Los Angeles* (1985) 170 Cal.App.3d 559, 567 [216 Cal.Rptr. 237]) and conceded by May Co.

Nor does the City's attempt to establish May Co.'s involvement in two separate businesses address the issue presented. █ "True, a taxpayer that engages in more than one business is required to be separately licensed and is separately taxed on each business. [Citations.] . . . [However, a]n activity which is 'an integral part' of a business function cannot be carved out for separate taxation by the ordinance." (*ITT Gilfillan, Inc.* v. *City of Los Angeles* (1977) 72 Cal.App.3d 421, 429 [140 Cal.Rptr. 193].)

In the present case, regardless of how May Co.'s finance charge receipts are classified, they are taxed at the same rate as May Co.'s gross receipts from sales. (LAMC § 21.108, subd. (c).) Thus, neither the taxability of finance charges nor their classification is in issue. Rather, it is the fair apportionment of the tax which concerns us here.

3.  *Local taxes must be fairly apportioned so as not to reach gross receipts directly attributable to activities carried on outside the city.*

█ In *City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d 108, our Supreme Court undertook a complete review of the need to fairly apportion local taxes. The *Shell* court reviewed decisions of the United States Supreme Court requiring apportionment as well as "the constellation of cases to which the *Belridge* [*City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823 and (1957) 48 Cal.2d 320 [309 P.2d 417]] decisions belong . . . ." (*Id.,* at p. 123.) Thereafter, *Shell* stated "with some confidence the principles which support and inform those decisions. In the first place, it is clear that in spite of the absence of a specific 'commerce clause' in our state Constitution, other provisions in that Constitution—notably those provisions forbidding extraterritorial application of laws and guaranteeing equal protection

---

[3] LAMC section 21.108, subdivision (a), provides: "[F]or each person engaged in the business of lending money, advancing credit, or lending credit or arranging for the loan of money or advancing of credit or lending of credit for and on his own behalf or on behalf of any other person as principal, agent or broker, . . . , the tax shall be $2,250.00 per year."

Subdivision (c) of section 21.108 further provides: "The tax imposed under the provisions of subsection (a) shall not apply to a person who, in the conduct of another business in . . . Los Angeles, engages in a business of the kind described in subsection (a) solely with customers or suppliers of that other business; . . . , however, if said other business is subject to a tax under this Article measured by gross receipts, all interest and other charges received as a result of the activity described in subsection (a) shall be included in the gross receipts by which the tax elsewhere imposed by this Article is measured; . . ."

of the laws . . .—combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction. On the other hand, those constitutional principles do not *prohibit* local license taxes upon businesses 'doing business' both within and outside the taxing jurisdiction; as long as such taxes are apportioned in a manner by which the measure of tax fairly reflects that proportion of the taxed activity which is actually carried on within the taxing jurisdiction, no constitutional objection appears. However, and conversely, no measure of apportionment can satisfy the constitutional standard if the measure of tax is made to depend upon a factor which bears no fair relationship to the proportion of the taxed activity actually taking place within the taxing jurisdiction." (*City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d at pp. 123-124.)

a. *Ruling No. 19 does not fairly apportion finance charge receipts.*

■ In Ruling No. 19, the City has declared that solicitation, negotiation and consummation of a retail sale constitutes 50 percent of the activity giving rise to finance charges and that the remaining 50 percent is attributable to accounting, collection and billing functions of the accounting center.

Although the City indicates its willingness to modify the apportionment rate to the extent May Co. can show some accounting center activity took place at the out-of-city stores, it holds intractably to the notion that solicitation, negotiation and consummation functions can account for no more than 50 percent of the finance charge income.

The City contends the 50 percent apportionment schedule promulgated by Ruling No. 19 is fair because it gives equal weight to the two activity centers which generate that income, namely, the sales and the billing functions. It argues further the extension of credit is an intangible and unique activity which, inferentially, is not susceptible of payroll comparisons because it is not a labor intensive activity.

The City also relies upon the presumption of regularity in official acts.

In response, the May Co. notes our Supreme Court's use of payroll comparisons in *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48, 59 [101 Cal.Rptr. 869, 496 P.2d 1237], for the purpose of demonstrating that although a sale occurs within the city, the entire gross receipts of such sale may not be taxable where a considerable proportion of the general sales support activity occurs outside the city.

May Co. also contends the 50 percent apportionment ratio has no fair relationship to the actual activity involved in generating finance charge income. Indeed, by arbitrarily including 50 percent of May Co.'s gross receipts from finance charges within the tax base, Ruling No. 19 fails to fairly apportion the gross receipts generated from finance charges based upon *activity* occurring within the city. Instead, Ruling No. 19 adopts and depends upon an apportionment formula which merely attributes equal weight to each of the two *locations* at which such activity takes place.

The City's acceptance of 10.72 percent as a reasonable method of apportionment in the years preceding those in issue is strong evidence the 50 percent presumption propounded by Ruling No. 19 does not comport with the reality of the situation. Additionally, because payroll figures appear to relate directly to *activity,* such a comparison, on its face, appears superior to one which blindly attributes half of the activity to each of two *locations* at which activity occurs. Further evidence of Ruling No. 19's invalidity is the nearly five-fold increase over the previously accepted 10.72 percent tax base.

Because the only evidence presently produced shows far more finance charge *activity* takes place at the out-of-city retail store than at the in-city accounting center, the trial court properly found May Co. had shown by clear and cogent evidence that Ruling No. 19 did not fairly apportion May Co.'s finance charge income. Therefore, the trial court properly struck down Ruling No. 19 as arbitrary, capricious and unconstitutional as applied to May Co.

    b.   *Use of Ruling No. 14 to apportion finance charges improper.*

In addition to striking down Ruling No. 19 as it applied to May Co., the trial court found the finance charges in issue should be apportioned in the same manner as retail sales are apportioned by Ruling No. 14.

Ruling No. 14 deals with persons selling goods, wares and merchandise. In apportioning gross receipts generated by the sale of merchandise, Ruling No. 14 considers several factors such as the storage and delivery of goods. Applying Ruling No. 14 to the present case renders 10 percent of the gross receipts derived from finance charges on retail sales occurring outside the city taxable, 5 percent attributable to in-city billing procedures and 5 percent attributable to in-city collection activity.

However, the City has contended steadfastly that its acceptance of the May Co.'s apportionment ratio of 10.72 percent for tax years prior to 1980 was not based on Ruling No. 14. Although the result obtained under Ruling No. 14 and the previously accepted apportionment figure are roughly equal, many of the factors considered in Ruling No. 14 simply have no relevance to advancing credit because that activity involves no physical commodities.

Therefore, both Ruling No. 14 and Ruling No. 19 are inappropriate means by which to apportion receipts generated by finance charges.

   4. *Because of the manner in which the parties have submitted this case, the previously accepted rate of 10.72 percent constitutes the only available fair method of apportionment.*

Rejection of Ruling No. 19 as unconstitutional and also of Ruling No. 14 as inapplicable leaves May Co.'s refund claim unaddressed. However, the stipulations on which the matter was submitted do not provide sufficient information to allow this court to fashion an alternative rule in a reasoned manner. Indeed, the fact which continues to overwhelm this case is the absence of an administrative record occasioned by the parties' stipulation May Co. had exhausted its administrative remedies.

Remand to the trial court for fuller factual development has been considered. However, if remanded the trial court would have to conduct hearings to supplement the parties' stipulations in order to marshal sufficient information to permit an informed decision as to how to apportion fairly the tax in issue. At oral argument both parties conceded the trial court would be burdened inappropriately by such a task. Further, in light of the number of tax years and tax dollars in issue, the parties agree presenting such evidence in a trial setting would not be a cost effective way of disposing of this dispute.

The stipulations allow only three possible bases upon which to apportion the tax on May Co.'s out-of-city deferred retail credit sales, namely, Ruling No. 19, Ruling No. 14 or the previously accepted 10.72 percent. Although this court is not in the habit of deciding issues by the process of elimination, it is the only practical method available here. Thus, we leave the parties in the position into which they have stipulated themselves and hold, for the tax years 1981 and 1982, the City must accept the 10.72 apportionment percentage. Because the City has agreed this formula represented a reasonable method of apportionment for the tax years preceding 1980 and stipulated that nothing had changed other than the promulgation of Ruling No. 19, this result is fair in light of the totality of the foregoing considerations.

Obviously, this holding does not tie the hands of the City in the future. The existence of one reasonable method of apportionment does not preclude the City's ability to adopt other methods of apportionment as long as the method utilized fairly apportions the tax based upon activity taking place within the City.

Although the City may choose to continue applying Ruling No. 19 to those taxpayers who either have not challenged it or have no argument with it, publication of this opinion gives notice to all taxpayers affected by Ruling

No. 19 of its possible arbitrary application. It would appear the City should abandon Ruling No. 19 as not suitable for fairly apportioning taxes.

At oral argument, the City indicated it had held public hearings and had received the views of many experts. The City found bias in these views based on the location at which the proponent maintained its accounting center. Presented with such divergence, the City admitted it basically "threw up its hands" and split the difference. While we do not profess to have the expertise of those who testified at the public hearing, it appears obvious a rule similar to Ruling No. 14, which takes into account all the various factors that go into the generation of the taxable income, has a better chance of withstanding constitutional attack than the compromise approach embodied in Ruling No. 19. In any event, the City indicated it would "have to go back to the drawing boards" and we trust the next effort will not suffer the obvious flaws of Ruling No. 19.

*5. The trial court erred in awarding prejudgment interest at other than the legal rate.*

■ The judgment of the trial court, which was prepared by counsel for May Co., recited the City would pay interest at the same rate the City charges delinquent taxpayers, i.e., 1.25 percent per month or 15 percent per annum. (LAMC § 21.05, subd. (e).) While sauce for the goose may, in other contexts, be sauce for the gander, the only basis upon which the trial court may award prejudgment interest is embodied in Civil Code section 3287, subdivision (a). (See *Todd Shipyards* v. *City of Los Angeles* (1982) 130 Cal.App.3d 222, 226 [181 Cal.Rptr. 652].) As Civil Code section 3287 does not state a specific interest rate, and no provision of the LAMC specifically permits recovery of interest by a taxpayer at any other rate, the legal rate of 7 percent is implied. (Cal. Const., art. XV § 1.) Similarly, Code of Civil Procedure section 685.010, subdivision (a), limits postjudgment interest to 10 percent. (*Davis & Cox* v. *Summa Corp.* (9th Cir. 1985) 751 F.2d 1507, 1522.)

CONCLUSION

In order to pass constitutional muster, the City may not apportion taxes based upon factors which bear no fair relationship to the proportion of the taxed activity actually taking place within the city. The presence of May Co.'s accounting center within the city cannot constitutionally justify Ruling No. 19 which arbitrarily includes 50 percent of all finance charges generated by out-of-city retail deferred payment credit sales within the City's tax base. The trial court's invalidation of that ruling is therefore affirmed.

However, the trial court's use of Ruling No. 14, which on its face applies to the sale of merchandise, is similarly inappropriate. Therefore, the finance charge income generated by May Co.'s out-of-city deferred payment retail sales must be apportioned at the previously acceptable rate of 10.72 percent for the tax years in issue. The judgment must be modified to reflect an award of interest at the appropriate legal rate.

## DISPOSITION

The judgment is affirmed to the extent it finds Ruling No. 19 unconstitutional as applied to May Co. To the extent the judgment utilizes Ruling No. 14 to apportion finance charge gross receipts attributable to out-of-city retail deferred payment credit sales, it is reversed. May Co. is entitled to judgment in the principal sum of $17,042.80 plus interest at the legal rate of 7 percent per annum from November 29, 1982, to October 19, 1987, and thereafter at the rate of 10 percent per annum. Each party to bear respective costs on appeal.

Croskey, J., and Luros, J.,* concurred.

On October 24, 1988, the opinion was modified to read as printed above.

* Assigned by the Chairperson of the Judicial Council.