[Nos. A109288, A110061. First Dist., Div. Three. Oct. 18, 2006.]

MACY'S DEPARTMENT STORES, INC., et al., Plaintiffs and Respondents, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

**COUNSEL**

Dennis J. Herrera, City Attorney, Julie Van Nostern, Chief Tax Attorney, Owen Clements, Chief of Special Litigation, Carol A. Boardman and Peter J. Keith, Deputy City Attorneys; Reed Smith, James P. Kleier, John R. Messenger; and Karen L. Snell for Defendant and Appellant.

Colantuono & Levin, Sandra J. Levin, Holly O. Whatley and Amy C. Sparrow for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Bewley, Lassleben & Miller, Jeffrey S. Baird, Joseph A. Vinatieri; Farella, Braun & Martel and Charles M. Sink for Plaintiffs and Respondents.

## OPINION

**SIGGINS, J.**—The City and County of San Francisco (the City) appeals a judgment that awarded Macy's Department Stores, Inc., and four related corporations (Macy's) a multi-year tax refund. The City argues that (1) Macy's 1995 and 1996 refund claims were untimely, (2) the trial court erred by refunding all local business taxes paid by Macy's during the contested period instead of the amount sufficient to negate the discriminatory effect of the tax, and (3) the rate of prejudgment interest should have been derived from a local ordinance rather than state law. We conclude Macy's tax refund must be limited to an amount sufficient to cure the discriminatory effect of the tax. So, we reverse.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to City ordinances in effect between 1995 and 1999, a business that operated in San Francisco was required to calculate its tax liability separately under payroll expense and gross receipts taxes, and to pay the greater of the two amounts. (S.F. Mun. Code, pt. III, former arts. 12-A & 12-B.) In April 2001, the City repealed the gross receipts tax, effective January 1, 2000.[2] (S.F. Ord. No. 63-01, § 1.)

On January 28, 1999, Macy's filed claims with the City for refunds of all taxes paid since 1995. Later Macy's filed refund claims for all taxes paid through the year 2000.[3] The claims were denied. In September 1999, Macy's filed the first of three complaints seeking tax refunds, on the basis that the City's business tax scheme failed the internal consistency test used to determine whether a state or local tax violates the commerce clause of the United States Constitution. Macy's also alleged the City's tax scheme violated the corresponding provisions of the California Constitution. The cases were consolidated in March 2002.

---

[1] We also remand for reconsideration of the award of costs in the trial court, in light of the disposition of this appeal.

[2] The repealing ordinance also provided a refund to any taxpayer who paid a gross receipts tax in 2000, "in an amount equal to the difference between the amount actually paid under the gross receipts ordinance for the 2000 tax year and the lesser amount payable under the payroll expense ordinance for such year." (S.F. Ord. No. 63-01, §§ 1, 8.)

[3] All the taxes paid by Macy's were calculated under the payroll expense provisions.

Three experts testified in the one-day court trial. Direct testimony was provided by their written reports, and each expert was subject to cross-examination. The experts agreed the City's pre-2000 "tandem tax" could hypothetically discriminate against intercity taxpayers, who might be subject to tax under a payroll expense measure in one jurisdiction and under a gross receipts measure in another, unlike a local taxpayer, who would pay tax only to San Francisco under only one measure.[4]

Economist Steven M. Sheffrin, Ph.D., was retained by the City and described a method for quantifying the extra amount an intercity taxpayer would hypothetically be burdened under the tandem tax. This amount was argued to represent the appropriate measure of refund. Macy's expert economist, Dr. Charles E. McLure, criticized Dr. Sheffrin's approach as bad public policy because liability for a partial refund would not serve to sufficiently deter local governments from enacting invalid tax measures, but did not challenge its efficacy in this case, and conceded that the fact situation was "relatively simple." Certified Public Accountant Everett P. Harry used financial information produced by Macy's during discovery and applied Sheffrin's method to calculate the maximum excess taxes the City's scheme could have imposed on Macy's.[5] Macy's declined to cross-examine Harry, and did not challenge his computations.

The trial court found the City's tandem tax scheme violated the federal and state Constitutions because it failed the internal consistency test. The court also concluded that *General Motors Corp. v. City and County of San Francisco* (1999) 69 Cal.App.4th 448 [81 Cal.Rptr.2d 544] compelled a full refund of all taxes paid by Macy's from 1995 through 1999, that Macy's refund claims for tax years 1995 and 1996 were timely, and that prejudgment interest should be set at 7 percent, accruing from the date of each tax payment.[6] The City timely appealed.[7]

---

[4] Macy's did not claim that it paid any actual excess taxes under the City's tandem tax scheme.

[5] Harry concluded that assuming Macy's was liable for the business tax at each of its stores separately and each store was located in a different jurisdiction, Macy's would have paid 1.2 percent more in taxes than a hypothetical local taxpayer with the same consolidated payroll and gross receipts.

[6] The court awarded Macy's over $13 million in tax refunds and interest for the tax years 1995–1999. The court denied Macy's claim for refund of its 2000 taxes, based on the City's retroactive repeal of the gross receipts tax for that year. Macy's has not appealed from that ruling.

[7] The City also appealed from the denial of its motion to tax costs. That appeal was consolidated with the City's appeal from the judgment, but the City's briefs raise no issues regarding denial of the motion. The application of the League of California Cities to file an amicus curiae brief in this appeal was granted on July 7, 2006. Macy's brief in response was filed on August 8, 2006, together with a request for judicial notice. The City filed opposition to

## DISCUSSION

### A.   *Measure of Refund*

■  In *Container Corp. v. Franchise Tax Bd.* (1983) 463 U.S. 159, 169–170 [77 L.Ed.2d 545, 103 S.Ct. 2933], the United States Supreme Court first articulated what has become known as the "internal consistency" test that measures the validity of a state or local tax argued to have a negative impact upon interstate commerce and thereby violated the dormant commerce clause. "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." (*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.* (1995) 514 U.S. 175, 185 [131 L.Ed.2d 261, 115 S.Ct. 1331].)

■  The internal consistency test has since been applied by California courts to determine the validity of local tax measures challenged as discriminatory in violation of the commerce clause of the United States Constitution and "the equivalent proscriptions derived from provisions of the California Constitution."[8] (*General Motors Corp. v. City of Los Angeles* (1995) 35 Cal.App.4th 1736, 1752 [42 Cal.Rptr.2d 430]; see also *Union Oil Co. v. City of Los Angeles* (2000) 79 Cal.App.4th 383, 389–390, 392 [94 Cal.Rptr.2d 81].)

■  When a tax fails because it is not internally consistent, the United States Supreme Court has generally left it up to the states to determine the

---

the request for judicial notice on August 23, 2006, and Macy's filed a reply on September 6, 2006. Because the documents in question do not appear to have been submitted to the trial court, and Macy's has made no showing of exceptional circumstances, the request for judicial notice is denied. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].)

[8] "[I]t is clear that in spite of the absence of a specific 'commerce clause' in our state Constitution, other provisions in that Constitution—notably those provisions forbidding extra-territorial application of laws and guaranteeing equal protection of the laws . . . —combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction." (*City of Los Angeles v. Shell Oil Co.* (1971) 4 Cal.3d 108, 124 [93 Cal.Rptr. 1, 480 P.2d 953].)

exact remedy they must provide to aggrieved taxpayers. (See, e.g., *Tyler Pipe Industries v. Dept. of Revenue* (1987) 483 U.S. 232, 252–253 [97 L.Ed.2d 199, 107 S.Ct. 2810].) The parameters of state-afforded relief were made clear in *McKesson*, (1990) 496 U.S. 18 [110 L.Ed.2d 17, 110 S.Ct. 2238] (*McKesson*), where the Supreme Court held: "To satisfy the requirements of the Due Process Clause, . . . the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy,' [citation], for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." (*Id.* at p. 39, fn. omitted.) The court concluded that when a tax scheme is found unconstitutional "only insofar as it operated in a manner that discriminated against interstate commerce," the taxing authority "retains flexibility in responding to this determination," and may "reformulate and enforce the [tax] during the contested tax period in any way that treats [the taxpayer] and its competitors in a manner consistent with the dictates of the Commerce Clause. Having done so, the [taxing authority] may retain the tax appropriately levied upon [the taxpayer] pursuant to this reformulated scheme because this retention would deprive [the taxpayer] of its property pursuant to a tax scheme that is *valid* under the Commerce Clause." (*Id.* at pp. 39–40.) "More specifically, the [taxing authority] may cure the invalidity of the [tax] by refunding to [the taxpayer] the difference between the tax it paid and the tax it would have been assessed were it extended the same [preferential treatment] that its competitors actually received."[9] (*Id.* at p. 40; accord, *Fulton Corp. v. Faulkner* (1996) 516 U.S. 325, 346–347 [133 L.Ed.2d 796, 116 S.Ct. 848].)

Here, the City does not appeal the trial court's determination that the tandem payroll and gross receipts tax scheme fails the internal consistency test, and is therefore unconstitutional. Instead, the City appeals the award to Macy's of a full refund of all business taxes paid from 1995 through 1999, rather than a partial refund in an amount sufficient to remedy any hypothetical discrimination. The trial court found that the measure of refund was definitively stated in *General Motors Corp. v. City and County of San Francisco*, to be a full refund of all taxes paid. We disagree.

---

[9] *McKesson* also stated that the taxing authority could alternatively assess back taxes from the taxpayer's local competitors, or combine a partial refund with a partial reassessment, "so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce . . . ." (*McKesson, supra,* 496 U.S. at pp. 40–41.) While Macy's claims the *McKesson* court contemplated a comprehensive remedy applicable to all taxpayers, the decision in that case refers repeatedly to the rights and remedies of "the petitioner," and does not restrict its analysis of available remedies in the fashion suggested by Macy's. (See, e.g., *id.* at pp. 36, 39–43, 51.)

■ Before the internal consistency test was applied to determine whether a state or local tax was legal, the rule was that a taxpayer was required to "show more than the possibility of erratic or unconstitutional application. 'One who attacks a formula of apportionment carries a distinct burden of showing by "clear and cogent evidence" that *it results* in extraterritorial values being taxed.' [Citations.]" (*City of Los Angeles v. Shell Oil Co., supra,* 4 Cal.3d at p. 126.) The taxpayer thus had the burden of showing the taxing authority actually taxed business activity outside its jurisdiction. (*Ibid.*) But the taxpayer no longer has to "show more than the possibility of erratic or unconstitutional application" to prove a tax is illegal. As the internal consistency test "asks nothing about the degree of economic reality reflected by the tax" (*Oklahoma Tax Comm'n v. Jefferson Lines, Inc., supra,* 514 U.S. at p. 185), *McKesson* makes clear that due process does not compel a full refund in all cases.

Neither does *General Motors Corp. v. City and County of San Francisco,* relied upon by the trial court. In *General Motors,* the court reviewed a facially invalid tax enacted by a taxing authority that placed the burden upon the taxpayer to demonstrate double taxation in order to secure a refund. (*General Motors Corp. v. City and County of San Francisco, supra,* 69 Cal.App.4th at pp. 453, 455.) This case is very different. It is only the tandem interaction of the City's payroll and gross receipts taxes that violates the commerce clause under the internal consistency test. In isolation, each of the taxes is valid.[10] Neither did the City place the burden on Macy's to demonstrate double taxation and the proper measure of refund. The City's experts calculated the amount of possible overpayments Macy's could have made under the tandem tax, and Macy's does not dispute it.[11]

Unlike *General Motors Corp. v. City and County of San Francisco,* there is no claim here that the City's proposed remedy is deficient because it is uncertain or would not eliminate the discriminatory effect of the tandem tax scheme. Instead, Macy's relies on its expert's testimony criticizing a partial refund as bad public policy. Macy's argues that hypothetical future cases might require complex factual analysis in order to quantify the appropriate refund, and that the partial refund proposed here by the City would not serve to discourage taxing authorities from enacting unconstitutional taxes in the future. We consider here only the claim before us, however, and "express no

---

[10] In fact, Macy's paid the disputed taxes under the payroll tax measure, and remains subject to the City's existing payroll tax.

[11] The City's expert reports were dated March 14, 2003, and filed with the court following trial.

general opinion regarding the appropriate remedy in other cases." (*Ceridian Corp. v. Franchise Tax Bd.* (2000) 85 Cal.App.4th 875, 889, fn. 9 [102 Cal.Rptr.2d 611].)[12]

This is also not a case where a full tax refund is required because the tax "was beyond the State's power to impose, as was the unapportioned tax in [*Atchison &c. Ry. Co. v. O'Connor* (1912) 223 U.S. 280 [56 L.Ed. 436, 32 S.Ct. 216]], or because the taxpayers were absolutely immune from the tax, as were the Indian Tribes in *Ward* [*v. Love County* (1920) 253 U.S. 17] [64 L.Ed. 751, 40 S.Ct. 419] and *Carpenter* [*v. Shaw* (1930) 280 U.S. 363] [74 L.Ed. 478, 50 S.Ct. 121] . . . ." (*McKesson, supra,* 496 U.S. at p. 39.) Macy's relies on those earlier cases to argue that a full refund is required here, but does not acknowledge their limiting treatment by the Supreme Court of the United States in *McKesson.* The more recent federal cases cited by Macy's do not address this issue, but merely reaffirm a taxpayer's general right to a postdeprivation refund of illegally-collected taxes, a proposition not under dispute in this case. (*Newsweek, Inc. v. Florida Dept. of Revenue* (1998) 522 U.S. 442 [139 L.Ed.2d 888, 118 S.Ct. 904]; *Reich v. Collins* (1994) 513 U.S. 106 [130 L.Ed.2d 454, 115 S.Ct. 547].)[13]

This court has followed *McKesson* to determine the options available to a taxing authority to remedy a discriminatory tax. (*Ceridian Corp. v. Franchise Tax Bd., supra,* 85 Cal.App.4th at pp. 888–889.) Under *McKesson*'s guidelines, we concluded the state Franchise Tax Board could "refund to [the taxpayer] the difference between the tax it paid and the tax it would have been assessed were it allowed the same deductions its competitors actually received," and affirmed the award of a stipulated refund. (*Ibid.*) While the parties here have not stipulated to the amount of the refund, Macy's does not challenge the City's calculation of the amount necessary to remedy any hypothetical excess it could have paid under the tandem tax. (See also

---

[12] We would be reluctant to adopt a rule because of its possible motivational import on the legislative branch. We assume acts passed by the Legislature are valid. (*Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1103 [105 Cal.Rptr.2d 139].) Moreover, Macy's position seems to overlook the operative effect of Proposition 218 passed by the voters in 1996 that added articles XIII C and XIII D to the state Constitution and required voter approval of any new local taxes.

[13] Nor did the case of *Union Oil Co. v. City of Los Angeles*, cited by Macy's as "closely analogous," address the issue presented here, namely the amount of the refund due a taxpayer who has been subjected to a tax that violates the internal consistency test by discriminating in favor of local taxpayers. Instead, the *Union Oil* court concluded alternative taxes imposed by the City of Los Angeles in that case "violate[d] state and federal constitutional proscriptions against restraint of commerce with respect to in-city manufacturers selling outside the City," and affirmed the trial court's award of "a full refund of business taxes paid by [the taxpayer] on its in-to-out sales." (*Union Oil Co. v. City of Los Angeles, supra,* 79 Cal.App.4th at pp. 385–386, fn. omitted.) There the City of Los Angeles did not contest the refund of taxes on the taxpayer's out-to-in sales, and the taxpayer did not seek a refund of the taxes paid on ("in-to-in") sales of products both manufactured and sold in Los Angeles. (*Id.* at p. 387.)

*Haman v. County of Humboldt* (1973) 8 Cal.3d 922, 928 [106 Cal.Rptr. 617, 506 P.2d 993] [court may eliminate effects of discriminatory tax by granting a refund based on the difference between the rates in question]; *City of Modesto v. National Med, Inc.* (2005) 128 Cal.App.4th 518, 525 [27 Cal.Rptr.3d 215] [when discriminatory taxes have been assessed, the taxing authority may issue a partial refund to the disfavored parties to equalize the tax rate].)[14]

While the states are free "to provide broader relief as a matter of state law than is required by the Federal Constitution" (*McKesson, supra,* 496 U.S. at p. 52, fn. 36), *General Motors Corp. v. City and County of San Francisco* does not hold that broader relief is required under California law, nor does it even consider the question. The court there relied on *McKesson,* but concluded the remedy proposed by the taxing authority would not eliminate the discrimination suffered by the taxpayer, nor would it provide a clear and certain remedy under the circumstances of that case. (*General Motors Corp. v. City and County of San Francisco, supra,* 69 Cal.App.4th at pp. 454–455.) Neither does Macy's argue that it is entitled to broader relief under the due process requirements of the California Constitution than under the federal Constitution, nor has it cited any authority to support such a claim.

Instead, Macy's says a full refund is compelled by article XIII, section 32 of the California Constitution, which provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." Article XIII, section 32 recognizes the taxpayer's right to refund of an illegal tax, as a corollary to the prohibition against enjoining the collection of any tax, but it does not address the proper measure of refund. Nor do the cases cited by Macy's discuss the issue. (*Todd Shipyards Corp. v. City of Los Angeles* (1982) 130 Cal.App.3d 222, 224–225 [181 Cal.Rptr. 652] [taxpayer entitled to recover prejudgment interest on taxes voluntarily refunded by municipality]; *Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1136–1139 [113 Cal.Rptr.2d 690] [rejecting taxpayer's claim for prepayment injunctive relief from city's

---

[14] In *City of Modesto v. National Med, Inc.,* the city's claim to recover unpaid taxes was denied after the city conceded its unapportioned business license tax was unconstitutional and the assessment on which the complaint was based was unenforceable. (*City of Modesto v. National Med, Inc., supra,* 128 Cal.App.4th at p. 526.) The court rejected the city's request for a remand to allow it to determine the tax de novo by applying apportionment guidelines adopted after the trial court's ruling. (*Ibid.*) The court also noted the taxpayer there had not filed a claim to recover the substantial business license taxes it had already paid. (*Id.* at p. 525.)

parking tax because city ordinance authorizing refund of taxes illegally collected provided adequate remedy at law].)

Macy's also says a full refund is required by the City ordinances in effect from 1995 through 1999 that governed payroll tax refunds. (Former § 911 of the Payroll Expense Tax Ord., S.F. Mun. Code, pt. III, art. 12-A.)[15] But that ordinance provides only that "the amount of any tax . . . illegally collected . . . may be refunded," and a plain reading does not support Macy's argument.[16]

Macy's cites several cases for the general proposition that an unconstitutional statute may be held void and without force or effect. But none of them address the remedy due a taxpayer subjected to a tax that violates the commerce clause or the California Constitution. (*Reclamation District v. Superior Court* (1916) 171 Cal. 672, 676, 682 [154 P. 845] [prohibition against enjoining the execution of statutes applies only to valid statutes]; *Brandenstein v. Hoke* (1894) 101 Cal. 131, 134–135 [35 P. 562] [doctrine protecting corporation from collateral questions as to the regularity of the proceedings taken in its organization does not apply when corporation was organized under unconstitutional law]; *Hardie v. Eu* (1976) 18 Cal.3d 371, 374, 378 [134 Cal.Rptr. 201, 556 P.2d 301] [state officials directed to refrain from enforcing statute that infringed on First Amendment rights and was not supported by compelling state interest]; *Brabant v. City of South Gate* (1977) 66 Cal.App.3d 764, 766, 772 [136 Cal.Rptr. 150] [enjoining enforcement of unapportioned local business license fee imposed on real estate brokers whose only office was in another city].)

■ Macy's is entitled to be placed in a position equivalent to that occupied by local taxpaying businesses so it will have paid a valid measure of taxes. (See *McKesson, supra,* 496 U.S. at pp. 42–43.) In this way, the City may limit Macy's tax refund to the amount necessary to remedy any discrimination from the City's former tandem tax. (*Id.* at pp. 39–41.) Macy's is not entitled to a full refund of all business taxes paid between 1995 and

---

[15] The text of former section 911 is set out below. (See fn. 18, *post.*) Similar language is contained in section 6-15.1, subdivision (a), of the City's Common Administrative Provisions, enacted in January 1998, the text of which is also set out below. (See fn. 17, *post.*)

[16] In *General Motors Corp. v. City and County of San Francisco,* the court referred to a similarly-worded city tax refund ordinance (authorizing a refund of taxes "illegally collected") in evaluating the parties' legal arguments regarding the amount of the refund due. (*General Motors Corp. v. City and County of San Francisco, supra,* 69 Cal.App.4th at p. 454.) But the court did not rely on the wording of the ordinance to decide the issue. Had it done so, it need not have gone on to address the efficacy of the proposed remedy. Instead, as discussed above, the court concluded the remedy proposed by the city in that case would not have remedied the discriminatory impact of the ordinance there at issue, nor would it have provided "clear and certain" relief because of the undue burden imposed on the taxpayer. (*Id.* at pp. 454–455.)

1999. Such a refund would place Macy's in a more favorable position than a local taxpayer during the same period. (See *Haman v. County of Humboldt*, *supra*, 8 Cal.3d at p. 928 ["In determining the proper remedy, we must adopt the one which will best further the legislative intent without increasing discrimination among other taxpayers."].)

### B. *Timeliness of Macy's 1995 and 1996 Claims*

The City argues that Macy's 1995 and 1996 claims were not timely filed, because a local ordinance effective January 1, 1998, shortened the limitations period for filing tax refund claims from three years to 90 days.[17] (S.F. Ord. No. 18-98.) Macy's 1995 and 1996 refund claims were filed on January 28, 1999, more than one year, but less than three years, after the taxes were paid.

The trial court concluded the claims were timely because their filing was governed by the three-year limitations period provided in former section 911 of the City's Payroll Expense Tax Ordinance.[18] The City argues the shortened limitations period began to run on the effective date of the 1998 ordinance, and the 1995 and 1996 claims were therefore barred.[19] The City claims that a legislative body may shorten the period of limitations applicable to preexisting claims, as long as claimants are left a reasonable time in which to assert their rights. (See *Coachella Valley Mosquito & Vector Control Dist. v.*

---

[17] Section 6.15-1, subdivision (a) of the City's Common Administrative Provisions, enacted January 16, 1998, provides: "Whenever the amount of any tax, interest or penalty has been overpaid or paid more than once, or has been erroneously or illegally collected or received by the City and County under Part III of the Municipal Code, that amount may be refunded, provided a verified claim in writing therefor, stating under penalty of perjury the specific grounds upon which the claim was founded, is filed with the Tax Collector within three years of the day of payment. Any claim for refund of taxes paid based on a violation of the United States or California Constitutions or a violation of a United States or California statute must be made within 90 days of the payment of the taxes for which the refund is claimed and must state the grounds on which the claim is based." (S.F. Mun. Code, pt. III, art. 6.)

[18] At the time the 1995 and 1996 taxes were paid, former section 911 of the City's Payroll Expense Tax Ordinance provided in relevant part: "Whenever the amount of any tax, penalty or interest has been paid more than once or has been erroneously or illegally collected or received by the City and County under this ordinance, it may be refunded provided a verified claim in writing therefore, stating the specific ground upon which said claim is founded, is filed with the Tax Collector within three years from date of payment." (S.F. Mun. Code, pt. III, art. 12-A.) The trial court also observed that retroactive application of the new 90-day limit would have completely barred Macy's 1995 and 1996 claims.

[19] The trial court noted that in March 2000, the San Francisco Superior Court held the 90-day limitations period specified in the City's 1998 ordinance was preempted by state law providing for a six-month or one-year limitations period. We need not determine here whether the 90-day limitations period is preempted, and, if so, what limitations period applies, because Macy's claims would be barred under any of these alternatives.

*California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1091–1092 [29 Cal.Rptr.3d 234, 112 P.3d 623].)

But the language of the City's Ordinance No. 18-98 does not support the City. It expressly provides: "This ordinance shall take effect on January 1, 1998, and shall apply to tax obligations and penalties that accrue after that date. All provisions of Part III of the Municipal Code [the City's Business and Tax Regulations Code] not expressly or necessarily changed by this ordinance shall remain in full force and effect . . . ." (S.F. Ord. No. 8-98, § 2.) Ordinance No. 24-98, which includes the repeal of section 911 and other procedural provisions of the Payroll Expense Tax Ordinance, and was enacted at the same time as Ordinance 18-98, similarly states: "The changes made in this ordinance shall take effect on January 1, 1998, and shall apply to tax obligations and penalties that accrue after that date. All provisions of this Article not expressly or necessarily changed by this ordinance shall remain in full force and effect . . . ." (S.F. Ord. No. 24-98, § 31.)

The City argues that "it is the statute of limitations amendment and the other provisions of the ordinance that are governed by the effective date language, not the refund claims themselves."[20] But the claims here arose out of tax obligations that accrued before January 1, 1998, when the ordinances became effective. By their own terms, the limitations periods in the 1998 ordinances do not apply. The trial court properly concluded that Macy's 1995 and 1996 claims were governed by the prior three-year limitation imposed by former section 911 of the Payroll Expense Tax Ordinance, and were therefore timely.[21]

### C. *Prejudgment Interest Rate*

The City and amicus curiae argue that the rate of prejudgment interest payable on Macy's tax refund should be determined according to a local ordinance that provides for interest at a variable rate, computed from the date

---

[20] The City also claims the ordinance "qualif[ied] [its] general effective date . . . with a special rule regarding the imposition of tax obligations and penalties."

[21] Contrary to the statement in the City's reply brief, the trial court did not "decline[] to adopt" Macy's interpretation of the language of the 1998 ordinance. Instead, the court simply stated both parties' positions, and concluded the City's proposed interpretation was not tenable. Nor does Macy's "concede that the trial court's denial of San Francisco's statute of limitations defense to Plaintiffs' 1995 and 1996 claims was based on a misunderstanding of what it means to 'prospectively apply' a statute that shortens an existing statute of limitations." We need not consider the City's argument "that 'prospective application' of a new statute of limitations means that the new statute of limitations begins to run as to pre-existing claims on the date the statute becomes effective, as opposed to the date the claim accrued," because by their own terms the ordinances shortening the applicable limitations period apply only to tax obligations that accrue after their effective date of January 1, 1998.

the claim for refund is made.[22] The trial court correctly concluded that prejudgment interest was payable at 7 percent, pursuant to state law, from the time the taxes were paid.

Article XIII, section 32 of the California Constitution states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."[23] Civil Code section 3287, subdivision (a) provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

While Civil Code section 3287 does not specify the rate of interest to be paid, article XV, section 1 of the California Constitution provides: "The rate of interest upon a judgment rendered in any court of this State shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the State shall be 7 percent per annum." Thus the courts have applied an interest rate of 7 percent to obligations governed by section 3287. (See,

---

[22] Article 6, section 6.15-2, subdivision (a) of the City's Business and Tax Regulations Code, enacted in January 1998, provides: "Any amounts refunded shall bear interest at the rate of two-thirds of one percent per month or fraction thereof; or the average rate of interest computed over the preceding six-month period, lawfully obtainable by the San Francisco Treasurer on deposits of public funds at the time refund is made, whichever rate is lower, and shall be computed from the date of payment to the date of refund except for amounts refunded as a result of a final judicial determination of the invalidity of any portion of, or amendment to Part III of the Municipal Code, or the invalidity of any administrative interpretation thereof, in which case interest shall be computed from the date of the claim for refund to the date of refund." (S.F. Mun. Code, pt. III.) According to the declaration of the City's director of budget and analysis division, the local ordinance provided for an interest rate of approximately 1.08 percent at the time of trial.

[23] As Macy's appears to recognize, its argument that article XIII, section 32 of the California Constitution applies only to statewide taxes was rejected in *Flying Dutchman Park, Inc. v. City and County of San Francisco, supra*, 93 Cal.App.4th at pp. 1136–1137. (See also *Todd Shipyards Corp. v. City of Los Angeles, supra*, 130 Cal.App.3d at p. 227 [applying public policy enunciated in article XIII, section 32 of the California Constitution to refund of local taxes].)

e.g., *Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252, 261, 262 [90 Cal.Rptr. 169, 475 P.2d 201]; *Walker v. Occidental Life Ins. Co.* (1967) 67 Cal.2d 518, 526 [63 Cal.Rptr. 45, 432 P.2d 741]; *Humphrey v. Equitable Life Assur. Soc.* (1967) 67 Cal.2d 527, 535 [63 Cal.Rptr. 50, 432 P.2d 746]; *Bonelli v. State of California* (1977) 71 Cal.App.3d 459, 470–471 [139 Cal.Rptr. 486]; *Daum Development Corp. v. Yuba Plaza, Inc.* (1970) 11 Cal.App.3d 65, 77 [89 Cal.Rptr. 458].)

■ The courts have also rejected the argument that a charter city is exempt from the operation of Civil Code section 3287 under the home rule doctrine, and have awarded interest on local tax refunds pursuant to that statute, accruing from the date the taxes were paid. (See *Todd Shipyards Corp. v. City of Los Angeles, supra,* 130 Cal.App.3d at pp. 225–228; *ITT Gilfillan, Inc. v. City of Los Angeles* (1982) 136 Cal.App.3d 581, 584–585 [185 Cal.Rptr. 848]; see also *May Dept Stores Co. v. City of Los Angeles* (1988) 204 Cal.App.3d 1368, 1378 [251 Cal.Rptr. 873].) The City claims those cases are distinguishable, because the Los Angeles ordinance there in question did not provide for the payment of any interest.[24] The City also argues that certain language in *May Dept Stores* supports application of the interest rate specified in the City's ordinance here.[25]

The City maintains that there are no cases that apply Civil Code section 3287 when a local ordinance provides for interest on local tax refunds, and that a local ordinance governing municipal affairs should prevail unless it conflicts with state law. But here section 3287 and applicable provisions of the California Constitution operate together to require the payment of interest on tax refunds at a rate of 7 percent, from the time the right to recover is vested in the taxpayer. The provisions of the City's ordinance purporting to apply a different rate of interest, which begins to accrue at a different time,

---

[24] The City also seeks to distinguish *Todd Shipyards* and *ITT Gilfillan*, on the basis that the taxpayers in those cases made their payments under protest, while Macy's paid its taxes to the City without protest for many years. The City claims the distinction is significant, "because a municipality should not be required to accrue, impound, or pay interest on a claim it does not know exists." But the courts' rulings in *Todd Shipyards* and *ITT Gilfillan* did not turn on that distinction, nor does the City's policy argument provide a valid basis to disregard the requirements of state constitutional and statutory law.

[25] In *May Dept. Stores Co. v. City of Los Angeles*, the court reversed an order setting interest at the same rate the city charged delinquent taxpayers, and concluded that "the only basis upon which the trial court may award prejudgment interest is embodied in Civil Code section 3287, subdivision (a). [Citation.] As Civil Code section 3287 does not state a specific interest rate, and no provision of the [municipal code] specifically permits recovery of interest by a taxpayer at any other rate, the legal rate of 7 percent is implied. [Citation.]" (*May Dept. Stones Co. v. City of Los Angeles, supra,* 204 Cal.App.3d at p. 1378.) *May Dept. Stores Co.* did not consider the validity of a local ordinance like the one here at issue, much less hold that it should govern in place of the applicable provisions of state law, as Macy's suggests.

thus conflicts with state law that occupies the field on a matter of statewide concern. (See *Todd Shipyards Corp. v. City of Los Angeles, supra,* 130 Cal.App.3d at pp. 225–226.)

The City also claims its ordinance provides for the calculation of interest in a manner similar to Revenue and Taxation Code section 5151, which governs refunds of state property taxes.[26] But here we are concerned with the rate of interest payable on the refund of a different, local tax to which the Legislature has not extended section 5151. In the absence of another provision by the Legislature, state law provides for an interest rate of 7 percent.

Finally, the City argues that even under Civil Code section 3287, interest should run from the date of the claim for refund, not from the date of payment, because the taxpayer's right to recover does not vest until the refund claim is filed. But the case on which the City relies, *State of California v. Superior Court* (2004) 32 Cal.4th 1234 [13 Cal.Rptr.3d 534, 90 P.3d 116], addressed a different issue. There the court held that a prison inmate who sued the state for failure to provide adequate medical care was required to allege facts sufficient to demonstrate or excuse compliance with the claim presentation requirement of the Tort Claims Act in order to survive a demurrer, and reiterated the principle that compliance with the claim presentation requirement was an element of a cause of action against a public entity. (*State of California v. Superior Court,* at pp. 1243–1244.) The court did not consider the issue presented here, namely when the right to recover damages vests for purposes of section 3287. In *Todd Shipyards Corp. v. City of Los Angeles,* by contrast, the court concluded "that debt was due, in each instance, on the day the respective payments were wrongfully collected, and in each instance the right to recover vested on the same day on which the money was paid." (*Todd Shipyards Corp. v. City of Los Angeles, supra,* 130 Cal.App.3d at p. 226; accord, *ITT Gilfillan Inc. v. City of Los Angeles, supra,* 136 Cal.App.3d at p. 585.) This comports with the purpose of prejudgment interest, to compensate the plaintiffs for loss of use of their property. (See *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 71–72 [108 Cal.Rptr.2d 715].)

---

[26] Revenue and Taxation Code section 5151, subdivision (a) provides for the payment of interest on refunds of state property taxes at "the greater of 3 percent per annum or the county pool apportioned rate . . . [i.e.] the annualized rate of interest earned on the total amount of pooled idle funds from all accounts held by the county treasurer, in excess of the county treasurer's administrative costs with respect to that amount, as of June 30 of the preceding fiscal year for which the refund is calculated." Under subdivision (c), interest accrues from the date of filing a claim for refund or payment of the tax, whichever is later, except under specified circumstances.

## DISPOSITION

The judgment awarding a refund of all taxes paid by Macy's is reversed, and the case is remanded with directions to enter judgment in an amount sufficient to remedy any potential discriminatory burden imposed by the City's prior tandem tax from 1995 through 1999. The case is also remanded for reconsideration of the award of costs in the trial court. Each party shall bear its own costs on appeal.

Parrilli, Acting P. J., and Pollak, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 17, 2007, S148342. Moreno, J., did not participate therein.